**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Steve A. Papazian, Bar No. 288097
steve@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff Cadence Design Systems, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., *a Delaware Corporation*,<br><br>Plaintiff,<br><br>v.<br><br>POUNCE CONSULTING, INC., *a California Corporation*, and POUNCE CONSULTING, S.A. de C.V., *a Mexican Sociedad Anónima de Capital Variable*.<br><br>Defendants. | Case No. 4:17-cv-04732-PJH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF CADENCE DESIGN SYSTEMS, INC.'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT POUNCE CONSULTING, S.A. DE C.V.**<br><br>Date:      March 28, 2018<br>Time:      9:00 am<br>Judge:     Hon. Phyllis J. Hamilton |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

    A.    The Parties ................................................................................................. 2

    B.    Cadence's Allegro, PSpice, and OrCAD Software Programs ................... 2

    C.    Cadence's Software Agreement, License Files, and Data Tracking Measures ............. 4

    D.    Pounce SA's Breach of the Software Agreement and Unauthorized Reproductions ..... 5

    E.    Cadence Informed Pounce of Its Breach and Unauthorized Activities ......... 6

III.    LEGAL STANDARD ........................................................................................... 7

IV.     ARGUMENT ........................................................................................................ 7

    A.    Jurisdiction and Service Are Proper ......................................................... 7

    B.    The Eitel Factors Favor Entry of Default Judgment ................................. 9

        1)    Factor (1): Prejudice to Cadence ................................................... 10

        2)    Factor (2) & (3): Merits of Claims and Sufficiency of Complaint ........ 11

        3)    Factor (4): Sum of Money at Stake ............................................... 14

        4)    Factor (5): Possibility of Dispute Concerning Material Facts ........... 14

        5)    Factors (6) & (7): Excusable Neglect and Decisions on the Merits ....... 15

    C.    Damages ................................................................................................... 16

        1)    Breach of Contract Damages ........................................................ 17

        2)    DMCA Statutory Damages Pursuant to 17 U.S.C. § 1203(c)(A)(3) ....... 18

    D.    Attorneys' Fees ....................................................................................... 20

    E.    Injunctive Relief ...................................................................................... 21

    F.    Request for Entry of Final Judgment Under Fed. R. Civ. P. 54(b) ............ 23

V.      CONCLUSION ................................................................................................... 24

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## TABLE OF AUTHORITIES

Cases

*Amini Innovation Corp. v. KTY Int'l Mktg.*,
  768 F. Supp. 2d 1049 (C.D. Cal. 2011) ................................................................. 15

*AWR Corp. v. ZTE, Corp.*, et al.,
  No. CV 10-5790 PA (SHx), 2011 WL 13217534 (C.D. Cal. June 13, 2011) .............................. 13

*Beachbody, LLC v. Jadee Invs. Corp.*,
  2017 U.S. Dist. LEXIS 172740 (C.D. Cal. Oct. 18, 2017) ...................................................... 21-22

*Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*,
  2000 U.S. Dist. LEXIS 19065 (N.D. Cal. Dec. 29, 2000) ............................................................ 9

*Cazorla v. Hughes*,
  2014 U.S. Dist. LEXIS 188404 (C.D. Cal. Apr. 7, 2014) .......................................................... 23

*Craigslist, Inc. v. 3taps, Inc.*,
  No. 3:12-cv-03816-CRB, 2015 U.S. Dist. LEXIS 138796 (N.D. Cal. Oct. 9, 2015) ..............21-23

*Craigslist, Inc. v. Kerbel*,
  2012 U.S. Dist. LEXIS 108573 (N.D. Cal. Aug. 2, 2012)................................................8, 21-22

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D. Cal. 2010) ...................................................................... 15

*Dish Network, LLC v. SatFTA*,
  2011 U.S. Dist. LEXIS 25038 (N.D. Cal. Mar. 9, 2011) .......................................................... 23

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*,
  749 F. Supp. 2d 1038 (N.D. Cal. 2010) ...................................................................10-11, 15

*eBay, Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) ........................................................................................ 21

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986).......................................................................... 1, 7, 10

*Elektra Entm't Group, Inc. v. Crawford*,
  226 F.R.D. 388 (C.D. Cal. 2005) ................................................................................ 22

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

*Ellison v. Robertson*,

357 F.3d 1072 (9th Cir. 2004)...................................................................................11

*Exec. Corp. v. Oisoon, LLC*,

2017 U.S. Dist. LEXIS 159922 (M.D. Tenn. Sept. 28, 2017) ...............................21, 23

*Fair Housing of Marin v. Combs*,

285 F.3d 899 (9th Cir. 2002)...............................................................................7, 11-12

*Geertson Seed Farms v. Johanns*,

570 F.3d 1130 (9th Cir. 2009)...................................................................................21

*Golden West Veg, Inc. v. Bartley*,

2017 U.S. Dist. LEXIS 11848 (N.D. Cal. January 27, 2017) ........................................7

*IBEW-NECA Local 180 Health & Welfare Trust v. Steiny & Co.*,

2015 U.S. Dist. LEXIS 174322 (N.D. Cal. Dec. 10, 2015) ............................................8

*IBEW-NECA Local 180 Health & Welfare Trust v. Steiny & Co.*,

2016 U.S. Dist. LEXIS 3261 (N.D. Cal. Jan. 11, 2016) .................................................8

*j2 Global Inc. v. Fax87, et al.*,

No. 13-05353 DDP (AJWx), 2016 WL 7260588 (C.D. Cal. Dec. 15, 2016) ........................15, 24

*Munhwa Broadcasting Corp. v. Create New Tech. Co. Ltd.*,

2015 WL 12747909 (C.D. Cal. Sept. 2, 2015)............................................................20

*National Equip. Rental, Ltd. v. Szukhent*,

375 U.S. 311 (1964) ...................................................................................................8

*NexRep, LLC v. ALIPHCOM*,

2017 U.S. Dist. LEXIS 53957 (N.D. Cal. Mar. 8, 2017)......................................passim

*NexRep, LLC v. Aliphcom*,

2017 U.S. Dist. LEXIS 53961 (N.D. Cal. Apr. 7, 2017).................................................8

*Penpower Tech., Ltd. v. S.P.C. Tech.*,

627 F. Supp. 2d 1083 (N.D. Cal. 2008) ......................................................................10

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,

219 F.R.D. 494 (C.D. Cal. 2003) ............................................................................7, 15

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
4:17-cv-04732-PJH

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,

 2012 WL 3306600 (E.D.N.Y. June 13, 2012)...................................................20

*Royal & Sun All. Ins. Plc v. Castor Transp., LLC*,

 No. 13-CV-01811-BAS DHB, 2014 WL 6088527 (S.D. Cal. Nov. 13, 2014)..............9

*Sony Computer Entm't Am., Inc. v. Filipiak*,

 406 F. Supp. 2d 1068 (N.D. Cal. 2005) ...............................................19-20

*Stockwire Research Group, Inc. v. Lebed*,

 577 F. Supp. 2d 1262 (S.D. Fla. 2008).................................................20

*TeleVideo Sys., Inc. v. Heidenthal*,

 826 F.2d 915 (9th Cir. 1987)..............................................................7

*TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*,

 843 F. Supp. 2d 1284 (S.D. Fla. 2012).......................................17, 19-20

*VBConversions LLC v. Gulf Coast Ventures, Inc.*,

 2016 U.S. Dist. LEXIS 105760 (C.D. Cal. Aug. 10, 2016) .....................12

*Wecosign, Inc. v. IFG Holdings, Inc.*,

 845 F. Supp. 2d 1072 (C.D. Cal. 2012)..............................................21

*Yoon Chul Yoo v. Arnold*,

 615 Fed. Appx. 868 (9th Cir. 2015) ..................................................17

<u>Statutes</u>

17 U.S.C. § 1201................................................................8, 11-12

17 U.S.C. § 1203.....................................................................passim

17 U.S.C. § 501..........................................................................8, 11

17 U.S.C. § 505..........................................................................20

28 U.S.C. § 1367............................................................................8

28 U.S.C. §§ 1331...........................................................................8

28 U.S.C. §§ 1338...........................................................................8

Cal. Civ. Proc. Code. § 3289 ...........................................................18

Cal. Civ. Proc. Code § 416.10 ...........................................................9

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Fed. R. Civ. P. 4 ................................................................................................................. 9

Fed. R. Civ. P. 54 ....................................................................................................... 23, 24

Fed. R. Civ. P. 55 ......................................................................................................... 1, 9

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 55(b), Plaintiff Cadence Design Systems, Inc. ("Cadence" or "Plaintiff") hereby moves for entry of default judgment against Defaulting Defendant Pounce Consulting, S.A. de C.V. ("Pounce SA").  As detailed in the First Amended Complaint ("FAC")—as well as supporting evidence—Pounce SA has been using pirated versions of Cadence's software.  When confronted, Pounce SA admitted to the infringement but then fell silent, leaving Cadence with no option but to file suit.  Specifically, Cadence asserts claims for copyright infringement, circumvention of copyright protections, and breach of the parties' Software Agreement.  Pounce SA failed to answer, and the Clerk entered default on December 6, 2017.  (Dkt. No. 44).

As detailed below, entry of default judgment is warranted.  Pounce SA was properly served at its "US Corporate" office in San Diego, it regularly conducts business in California, and it is subject to personal jurisdiction here.  There is no dispute that Pounce SA has actual knowledge of this lawsuit and has intentionally defaulted: indeed, Cadence's counsel exchanged emails with both Pounce SA's President and in-house counsel, offering repeated opportunities for Pounce SA to participate in this litigation.  Most recently, Pounce SA failed to appear at the mandatory case management conference and then failed to participate in the court-ordered mediation.  (*See* Dkt. No. 53).  Further, the seven *Eitel* factors strongly support entry of default judgment.

Cadence's claims are not only supported by the well-pleaded Complaint (which is sufficient on its own) but also by additional evidence.  Cadence's "phone home" data reports show that machines associated with Pounce SA's domain name, IP address, and other data points have used and copied Cadence's software thousands of times without authorization.

Accordingly, Cadence respectfully requests that the Court enter default judgment against Pounce SA in the amount of $18,547,936.99, which consists of statutory damages for Pounce SA's DMCA violations, compensatory damages for lost licensing revenues, prejudgment interest, and attorneys' fees.  Cadence also seeks entry of a permanent injunction barring Pounce SA from further copyright infringement, circumvention of the copyright protections and breach of the Cadence software license agreement.  Finally, Cadence asks that the Court enter a final judgment under Rule 54(b) against Pounce SA.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## II.   FACTUAL BACKGROUND

### A.   The Parties

Cadence, a Delaware corporation with its principal place of business in San Jose, California, is a worldwide leader in Electronic Design Automation (EDA) software and engineering services and semiconductor IP.   (FAC ¶¶ 2, 16).   Cadence's custom and analog tools help engineers design transistors, standard cells, and IP blocks that make up systems on chips, as well as integrated circuits and printed circuit boards.   (*Id.* ¶ 16).   Cadence owns several design platforms, including Allegro®, OrCAD®, PSpice®, and other related software and tools.   (*Id.* ¶ 17).   Cadence owns valid copyrights related to its Allegro®, OrCAD®, and PSpice® products, software, and tools.[1]

Defaulting Defendant Pounce SA is a Mexican Sociedad Anónima de Capital Variable with its principal place of business in Mexico.   (*Id.* ¶ 4).   Pounce SA provides custom solutions in embedded design, electronics manufacturing, IT and staffing services.   (*Id.* ¶¶ 25, 38).   Pounce SA offers services related to electronic design and requires certain engineers on its staff to be skilled in the use of Cadence's software and design suites used for this purpose.   (*Id.* ¶¶ 25, 40-43).

Defendant Pounce Consulting, Inc. ("Pounce Inc.") is a California corporation with its principal place of business in San Diego, California.   (*Id.* ¶ 3).   Cadence alleges that pounce Inc. is an alter ego of Pounce SA.   (*Id.* ¶¶ 5-10).   But Pounce Inc. has answered the Complaint and denies that charge.   Specifically, Pounce Inc. contends that it is only a "small staffing agency" that "hires engineers and other professionals and places them on projects in the USA."   (Dkt. No. 41, ¶ 11).   Pounce Inc.'s sole defense that Cadence "has sued the wrong party."   (Dkt. No. 41, ¶ 9).

### B.   Cadence's Allegro, PSpice, and OrCAD Software Programs

By way of background, Cadence offers a suite of software programs for creating of electronic components.   As relevant here, Cadence offers programs to design, test, and "floorplan" printed circuit boards.   (Alfaro Decl. ¶ 5).   For example, Cadence's Allegro software suite enables the

---

[1] Cadence owns Copyright Works entitled Allegro 16.5 (Copyright Registration No. TX 7-751-386 ("the '386 Registration)); Allegro PCB 16.6 (Copyright Registration No. TX 8-323-840 ("the '840 Registration")); PSPICE 16.5 Copyright Registration No. TX 8-320-014 ("the '014 Registration")); PSPICE 16.6 (Copyright Registration No. TX 8-320-008 ("the '008 Registration")); OrCAD16.5 (Copyright Registration No. TX 8-320-016 ("the '016 Registration")); and OrCAD16.6 (Copyright Registration No. TX 8-320-041 ("the '041 Registration")).   (FAC ¶ 17, 19-24).

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  schematic design of electronic circuitry. (*Id.*). In general, schematics show how various

2  components—*e.g.*, batteries, capacitors, resistors, diodes and the like—are connected on a conceptual

3  level in an electronic circuit. (*Id.* ¶ 6).

4  The image to the right is an example of

5  one such schematic created by the

6  Cadence Allegro software. (*Id.* ¶ 6).



7      Cadence's PSpice software

8  enables engineers to simulate and

9  verify circuitry designs. (*Id.* ¶ 7). For

10  example, PSpice can test and model a

11  circuit for a variety of contingencies, exposing flaws in a circuit design and ensuring, among other

12  things, appropriate electronic input levels, timing, and accuracy. (*Id.* ¶ 7). PSpice can be integrated

13  with OrCAD software to test and model schematics designed in that program. (*Id.* ¶ 8).

14      Cadence's OrCAD software allows a user to design the physical layout of electronic

15  components on a printed circuit board. (*Id.* ¶ 8). This physical design (*i.e.*, "floorplanning") can be



16  integrated with electronic

17  schematics to, *inter alia*, create

18  three-dimensional views of

19  printed circuit boards (as

20  shown to the left). (*Id.* ¶ 8).

21  After finalizing a design,

22  Cadence's OrCAD software

23  can export manufacturing data

24  instructions in a variety of

25  formats to fabricate the printed circuit board under design. (*Id.* ¶ 8).

26      As alleged in Cadence's FAC, Pounce SA has extensively used unlicensed versions of these

27  software programs. (FAC ¶¶ 38-39, 44-45, 52-56, 61-69, 78, 85).

28  / / /

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
4:17-cv-04732-PJH

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

### C.   Cadence's Software Agreement, License Files, and Data Tracking Measures

Cadence has made significant investments in technology to prevent unauthorized access or use of its software and intellectual property.  (FAC ¶ 26).  When a customer purchases a license to Cadence's software, the customer receives an invoice indicating the type of license purchased, as well as a license file.  (*Id.* ¶ 27).  Cadence's software will not operate unless a user installs the Cadence License Manager, accepts the terms and conditions presented Cadence's Software Agreement, and then uses the License Manager to locate a Cadence license file.  (*Id.* ¶¶ 28-32).  Untampered Cadence software only operates with a valid license file issued by Cadence.  (*Id.* ¶ 33).

Cadence has also implemented data tracking measures to monitor alterations or illicit uses and reproductions of Cadence's products.  (*Id.* ¶¶ 35, 36).  Cadence does so by using so-called "phone home" technology, which reports to Cadence (via a third-party vendor, Revulytics, Inc.) specific information about a computer using an altered or unauthorized reproduction of Cadence software.  (Alfaro Decl. ¶¶ 16-19).  Through Revulytics' monitoring software, Cadence is able to detect, identify, and collect information on any online user that altered Cadence's software by circumventing Cadence's license mechanism (*e.g.,* the License Manager) or using counterfeit (*i.e.,* "cracked") license files, or otherwise using Cadence's software without authorization.  (*Id.* ¶ 17-18).

At a high level, the phone home technology works as follows.  ████████████ ████████████████████████████████████████████████████ (*Id.* ¶ 17).  ████████████████████ ████████████████████████████████████ (*Id.*). ████████████████████████████████████ ████████████████████████████████ (*Id.* ¶ 18).  ████████████████████████ (*Id.*). ████████ ████████████████████████████████████ ████████████ • ████████████████████

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**



(*Id.*).  The upshot is that sufficient information is provided to Cadence to identify the wrongdoer.

Users of Cadence Software consent to the collection of this information upon accepting the terms

and conditions of the Software Agreement.  (See Dkt. No. 25-7 at 1).

### D.  Pounce SA's Breach of the Software Agreement and Unauthorized Reproductions

Pounce SA has no legal copies of Cadence's software.  (FAC ¶¶ 44, 69).  Nonetheless,

Pounce SA accepted and agreed to be bound by the terms of the Software Agreement when it

installed Cadence's software.  (*Id.* ¶ 46).  In so doing, Pounce SA agreed "to take all reasonable

steps and to exercise due diligence to protect the Product from unauthorized reproduction,

publication, or distribution," and that it would "have a reasonable mechanism in place to ensure that

the Software may not be used or copied by unlicensed persons."  (*Id.* ¶¶ 30, 48).  If Pounce SA

refused to abide by the terms of the Software Agreement, it was required to "return the Software

and all accompanying items."  (*Id.* ¶ 30).  Pounce SA has repeatedly (and unlawfully) obtained,

reproduced, and used Cadence's software without Cadence's authorization in breach of these

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
4:17-cv-04732-PJH

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1   obligations.  (*Id.* ¶¶ 39, 40, 45, 56).

2   Pounce SA's breach is well-documented.  (*Id.* ¶¶ 62-68).  Through its technological and data

3   tracking measures, Cadence detected ***thousands*** of unauthorized uses on at least 26 different

4   Pounce SA machines using unauthorized reproductions of Cadence's software.  (*Id.* ¶¶ 62-63).  The

5   domains "corp.pounceconsulting.com" and "pounceconsulting.com" and email addresses

6   "@corp.pounceconsulting.com" and "@pounceconsulting.com" (all of which belong to Pounce SA)

7   are linked to machines using unauthorized reproductions of Cadence Software.  (*Id.* ¶¶ 64-66;

8   Alfaro Decl. ¶ 22).  These detected uses represent only a fraction of actual uses, as they only

9   represent instances when Pounce SA used the software while connected to the internet and without

10  circumventing the phone home technology.  (*See* Alfaro Decl. ¶ 25).  Further, the detected uses

11  reveal computers with machine names such as "pounce-pc" and "pounce-59fdb41d" that have been

12  linked with machines using unauthorized reproductions of Cadence Software.  (FAC ¶ 68).  IP

13  addresses associated with Pounce SA have also been detected.  (*Id.* ¶ 67).

14  **E.   Cadence Informed Pounce of Its Breach and Unauthorized Activities**

15  On January 28, 2016, Cadence informed the CEO and President of Pounce SA, Mr. Roger

16  Viera, that Pounce was using "cracked" and unauthorized versions of Cadence's software.  (*Id.*

17  ¶ 70).  Pounce's counsel indicated that it was willing to resolve the matter without resorting to

18  litigation, which Cadence attempted to do.  (*Id.* ¶¶ 71-72).  But Pounce SA refused to pay for any of

19  its past uses and ignored the bulk of Cadence's follow-up communications.  (*Id.* ¶¶ 72, 73).  When

20  it did choose to respond, it did little more than confirm its breach of contract.

21  Indeed, Pounce SA admitted that it has used unauthorized reproductions of Cadence's

22  software.  Namely, Mauricio Gomez, the Chief Operating Officer at Pounce SA, wrote in a

23  February 2, 2016 email to Cadence that "we detected the presence of a non conformance cadence

24  sw in Pounce equipment . . . [and] performed deletion of every copy we had inside our facilities."

25  (Ex. A).  Internal Pounce SA emails corroborate its unauthorized copies of Cadence Software.  (*See*

26  Ex. B (9/24/14 Email from M. Gomez to J. Llera) ("We are removing all software instances of

27  allegro orcad from our computers . . . .")).  While Pounce SA claimed it deleted Cadence's software

28  from its computers in 2014, the phone home reports confirmed Pounce SA's continued

6

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
4:17-cv-04732-PJH

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   unauthorized use and reproductions into at least April 2016.  (*See* Phan Decl. ¶¶ 8).

2         Pounce SA continues to use and reproduce Cadence's software without its permission.

3   (FAC ¶ 74).  For example, a 2017 job posting for a Senior Hardware Position at Pounce SA lists

4   "handling . . . Cadence Design Suite (including OrCAD PCB Editor, OrCAD Capture CSI, OrCAD

5   Pad Designer)" as "required knowledge."  (*Id.* ¶ 43.)  Further, Pounce SA's online marketing

6   materials continue to tout its use of Cadence's Allegro in its "Firmware and Software Design"

7   business.  (*See* Ex. C).

8   **III.   LEGAL STANDARD**

9         In determining whether to enter default judgment, courts in the Ninth Circuit consider the

10  factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  Specifically, the *Eitel*

11  factors are (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive

12  claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the

13  possibility of a dispute concerning material facts; (6) whether the default was due to excusable

14  neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring

15  decisions on the merits. *Id.* at 1471-72.  In considering these factors, "default judgments are more

16  often granted than denied."  *Golden West Veg, Inc. v. Bartley*, 2017 U.S. Dist. LEXIS 11848, at *5

17  (N.D. Cal. January 27, 2017) (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D.

18  494, 498 (C.D. Cal. 2003)).

19        On a motion for entry of default judgment, the Court accepts the well-pleaded allegations in

20  the Complaint as true, except with respect to damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d

21  915, 917-18 (9th Cir. 1987).  The Court is not required to make detailed findings of fact.  *Fair*

22  *Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

23  **IV.   ARGUMENT**

24        This Court has jurisdiction over Pounce SA and all seven *Eitel* factors strongly support entry

25  of default judgment against Pounce SA.  Cadence's motion should be granted.

26        **A.   Jurisdiction and Service Are Proper**

27        Before entering default judgment, the Court must confirm that it has jurisdiction over the

28  defendants. *IBEW-NECA Local 180 Health & Welfare Trust v. Steiny & Co.*, 2015 U.S. Dist.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1   LEXIS 174322, at \*5-\*6 (N.D. Cal. Dec. 10, 2015), *report and recommendation adopted in IBEW-*
2   *NECA Local 180 Health & Welfare Trust v. Steiny & Co.*, 2016 U.S. Dist. LEXIS 3261 (N.D. Cal.
3   Jan. 11, 2016).  Personal jurisdiction can be determined based on the well-pleaded complaint's
4   factual allegations.  *See id.* (finding personal jurisdiction in default judgment based on allegations
5   of complaint).  The Court must also assess whether the defendant against whom default judgment is
6   sought was properly served with notice of the action.  *NexRep, LLC v. ALIPHCOM*, 2017 U.S. Dist.
7   LEXIS 53957, at \*5 (N.D. Cal. Mar. 8, 2017), *report and recommendation adopted in NexRep, LLC*
8   *v. Aliphcom*, 2017 U.S. Dist. LEXIS 53961 (N.D. Cal. Apr. 7, 2017).

9           Here, there is no dispute that jurisdiction and service are proper.  The Court has subject
10  matter jurisdiction pursuant to 17 U.S.C. § 501, *et seq.* (copyright infringement), 17 U.S.C. § 1201,
11  *et seq.* (circumvention of copyright protection under the DMCA), and 28 U.S.C. §§ 1331 (federal
12  question jurisdiction) and 1338(a).  (FAC ¶ 11).  The Court has supplemental jurisdiction over the
13  breach of contract claim pursuant to 28 U.S.C. § 1367(a).  No challenges to subject matter
14  jurisdiction have been raised by either defendant.  (Dkt. No. 30 at 1:7-12).  Nor has either defendant
15  moved to quash service on Pounce SA.

16          The Court has personal jurisdiction over Pounce SA.  As an initial matter, Pounce SA
17  agreed "to submit to exclusive jurisdiction in the federal and state courts of California, U.S.A. in the
18  event of a dispute."  (Dkt. No. 29-7, § 27).  Courts routinely enforce such forum selection clauses,
19  including in motions for default judgment.  *Craigslist, Inc. v. Kerbel*, 2012 U.S. Dist. LEXIS
20  108573, \*17 (N.D. Cal. Aug. 2, 2012) (holding forum selection clause in website's Terms of Use
21  was presumptively valid in considering motion for default judgment); *National Equip. Rental, Ltd.*
22  *v. Szukhent*, 375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance to submit to
23  the jurisdiction of a given court.").

24          Further, as discussed below, Cadence properly served Pounce SA in California.  (Dkt. Nos.
25  29, 29-1).  This also confers personal jurisdiction over Pounce SA.  *See NexRep, LLC*, 2017 U.S.
26  Dist. LEXIS 53957, at \*5 (granting default judgment and finding "[p]ersonal jurisdiction is satisfied
27  because NexRep served summons on Jawbone in California.").

28  / / /

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
4:17-cv-04732-PJH

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

In any event, Pounce SA is subject to personal jurisdiction under a traditional constitutional analysis because it does business in this District and its corporate headquarters is located in San Diego, California.  (FAC ¶ 12).  Pounce SA has also purposefully availed itself of the rights and privileges of doing business in this State and District because it regularly conducts business in this District, and has clients located in this District.  (*Id.* ¶ 13; Ex. D at 12 (Pounce SA catalogue describing work performed for Advanced Micro Devices, Inc., which is based in Sunnyvale, California)).  Pounce SA has purposefully directed its activities towards this forum and District by intentionally and repeatedly copying, downloading, and otherwise using "cracked" and unauthorized versions of Cadence's software, knowing that harm is likely to be suffered by Cadence in this District.  (FAC ¶ 13).  Pounce SA has also intentionally and repeatedly copied, downloaded, and/or used "cracked" and unauthorized reproductions of Cadence's software at IP addresses located in this District, and repeatedly bypassed Cadence's technological measures in this District designed to prevent unauthorized use of Cadence's software.  (*Id.* ¶ 13).

As shown by the proof of service, Pounce SA was properly served on November 2, 2017, at its "US Corporate office" pursuant to Fed. R. Civ. P. 4(h)(1)(B) and Cal. Civ. Proc. Code § 416.10(b).  (Dkt. Nos. 29, 29-1, 29-2; *see also* Ex. D).  Pounce SA has not challenged service, and it is undisputed that Pounce SA's CEO and president, Mr. Viera, has actual knowledge of this lawsuit since at least November 28, 2017, knows that Pounce SA has been served, and has been advised that Cadence will seek entry of default and default judgment against Pounce SA, as set forth in more detail below.  (Dkt. No. 43-2; *see* Exs. E-F).  Indeed, Pounce SA would bear a heavy burden of proof should it try to challenge service of process at this stage.  *See Royal & Sun All. Ins. Plc v. Castor Transp., LLC*, No. 13-CV-01811-BAS DHB, 2014 WL 6088527, at *2 (S.D. Cal. Nov. 13, 2014) (once default has been entered, defendant bears burden of proving lack of service if defendant was aware of the proceedings).

## B.   The *Eitel* Factors Favor Entry of Default Judgment

After entry of default by the court clerk, the Court may enter default judgment pursuant to Fed. R. Civ. P. 55(b)(2).  *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Dec. 29, 2000).  As noted above, courts in the Ninth Circuit

9

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

consider a motion for default judgment under the seven factors set forth in *Eitel*.  As detailed below, each of these factors strongly favors entry of default judgment.

### 1)   Factor (1): Prejudice to Cadence

If default judgment were not entered, Cadence would be left with no other recourse for recovery against Pounce SA—and possibly not recourse at all.  *NexRep, LLC*, 2017 U.S. Dist. LEXIS 53957, at *6-*7.   The only Defendant to answer the FAC (Pounce Inc.) contends it is not the right party and affirmatively alleges that "[t]he entity Plaintiff is alleging committed a violation is a company called Pounce Consulting S.A. de C.V." (Dkt. No. 41 at 2-3).  But the purported "right party" refuses to respond to the operative Complaint despite common ownership, proper service and ample notice.  Indeed, Pounce SA has intentionally defaulted and ignored the emails sent by Cadence's counsel warning that Cadence was seeking default (Dkt. No. 43-2), and default judgment.  (Exs. E-F).  This appears to be a strategic decision: one defendant alleges it is not the right party and has no information about the right party, while the other defendant refuses to participate at all.[2]  (*See* Dkt. Nos. 41, 44).  Further, **both defendants** failed to attend the ADR conference and the case management conference.  (Dkt. Nos. 34-36, 38, 40).

Further, "prejudice necessarily flows from the plaintiff's ability to demonstrate the merits of its claim because, in the absence of a default judgment, plaintiff would be without other recourse for recovery to which it is entitled."  *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010)  As discussed under Factors (2) and (3), Cadence's claims are meritorious.

At this rate, Cadence has no recourse for recovery for stopping Pounce SA's unauthorized reproductions and use of Cadence's software and tools, which will continue unabated.  *See NexRep, LLC*, 2017 U.S. Dist. LEXIS 53957, at *6-*7; *Penpower Tech., Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088-89 (N.D. Cal. 2008) ("If Defendants continue to sell counterfeit products and products incorporating [Plaintiffs'] software or unlawfully incorporate identical or substantially similar logic, structure, organization, and sequencing of [Plaintiffs'] software into their products,

---

[2] Cadence's "phone home" reports identify specific Pounce SA computers using Cadence's software without authorization, (Alfaro Decl. ¶¶ 20-23), but Cadence cannot even inspect those computers because Pounce SA refuses to participate in this litigation, (Dkt. No. 44), while Pounce Inc. contends it has no control over those computers.  (Ex. G (Pounce Inc. Resp. to Rog Nos. 1-3)).

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
4:17-cv-04732-PJH

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Plaintiffs will likely be without other recourse or recovery. Such a situation qualifies as prejudice.").  Pounce SA's refusal to participate in the judicial process should not be countenanced. This factor strongly favors entry of default judgment.

### 2)   Factor (2) & (3): Merits of Claims and Sufficiency of Complaint

Courts often analyze the second and third factors (merits and sufficiency of plaintiff's claims) together.  *NexRep, LLC*, 2017 U.S. Dist. LEXIS 53957, at *7; *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  The plaintiff must state a claim on which it may recover.  *Dr. JKL Ltd.*, 749 F. Supp. 2d. at 1048.  The Court accepts all well-pleaded allegations regarding liability as true.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Here, Plaintiff alleges meritorious claims for copyright infringement, circumvention of copyright protection systems and breach of contract.  The one appearing Defendant (Pounce Inc.) has never brought a Rule 12(b)(6) motion or otherwise disputed that the FAC properly states claim.

### a)   Copyright Infringement Under 17 U.S.C. § 501

The elements of copyright infringement are (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act.  *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1048 (granting default judgment on copyright infringement claim under § 501); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  Here, Cadence owns valid Copyright Works related to its software, including the '386, the '840, the '014, the '008, the '016 and the '041 Registrations.  (FAC ¶¶ 19-24, 76, 77; *see also* Dkt. Nos. 25-1-25-6 (registrations of same)).  As alleged in the FAC, Pounce SA copied, downloaded, modified, used, and installed Cadence's software (which is protected by the asserted registrations) ***without*** Cadence's permission or authorization, (FAC ¶¶ 39, 40, 45, 54, 56, 78), causing irreparable injury and other harm to Cadence.  (*Id.* ¶¶ 80-82).  Cadence has stated a meritorious claim for copyright infringement.

### b)   Circumvention of Copyright Protection Systems Under 17 U.S.C. § 1201

To state a claim for circumvention of copyright protection systems under 17 U.S.C. § 1201(a)(1), a plaintiff must show that (1) the work was protected under the Copyright Act; (2) the work was protected by a technological measure that effectively controls access; and (3) the measure was circumvented in order to obtain access.  *In re Maxim Integrated Prods.*, 2013 U.S. Dist. LEXIS

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

196320, at *98 (W.D. Pa. Mar. 19, 2013) (denying motion to dismiss § 1201(a)(1) claim);

*VBConversions LLC v. Gulf Coast Ventures, Inc.*, 2016 U.S. Dist. LEXIS 105760, at *15-*16 (C.D. Cal. Aug. 10, 2016) (granting default judgment on § 1201(a) claim).

As discussed above, Cadence's software is protected by the '386, the '840, the '014, the '008, the '016 and the '041 Copyright Registrations.  (FAC ¶¶ 19-24, 85).  Cadence has implemented sophisticated technological mechanisms that provide security-controlled access to Cadence's works, which are protected by valid registered copyrights.  (*Id.* ¶¶ 26-34, 84).  Indeed, Cadence's software will not operate unless the Cadence License Manager is installed on the computer that will use Cadence's software, or on a server accessible to each computer that will use the software.  (*Id.* ¶ 28).  Further, once the License Manager is installed, the user must specify the location of a Cadence license file, or later use a License Server Configuration Utility to configure the appropriate licensing.  (*Id.* ¶ 32).  A user may only install Cadence's copyrighted software ***after*** the License Manager is installed, and Cadence's software will not operate on any computers lacking a valid license file issued by Cadence (which is provided after installing the License Manager).  (*Id.* ¶ 33).  To be sure, a user cannot install or permissibly use Cadence's software without installing the License Manager.  (*Id.* ¶ 34).

Pounce SA circumvented these security measures by altering, "cracking" and using altered or "cracked" versions of Cadence's License Manager, software and license files.  (FAC ¶¶ 52-56, 58-61, 85).  Further, Pounce SA has accessed additional Product Options that are only available for additional costs and would not be included in the typical version of the products Pounce SA has been using (which they did not pay for in any event).  (FAC ¶¶ 58-61).  Pounce SA has also contributed to the circumvention of Cadence's measures by obtaining, downloading and copying unauthorized version of Cadence's License Manager and software.  (FAC ¶ 87).  Pounce SA's willful conduct has caused Cadence to suffer irreparable injury, and other harm.  (FAC ¶¶ 86, 88, 89).  Cadence has stated a meritorious claim under 17 U.S.C. § 1201(a)(1).

c)   Breach of Contract

Under California law, the elements for breach of contract are (1) existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) damages.

12

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

*NexRep, LLC.*, 2017 U.S. Dist. LEXIS 53957, at *9.  Here, as alleged in the FAC, Pounce SA agreed to the terms of the Software Agreement by clicking 'I accept the terms of the license agreement" in order to proceed with installation of the License Manager and Cadence's software. (FAC ¶¶ 46, 91).  In accepting those terms, Pounce SA agreed that it would "take all reasonable steps and to exercise due diligence to protect the Product from unauthorized reproduction, publication, or distribution" and "have a reasonable mechanism in place to ensure that the Software may not be used or copied by unlicensed persons" in exchange for using Cadence's software.  (FAC ¶¶ 30, 48, 91).  Cadence performed under the Software Agreement by providing functioning software to Pounce SA (albeit without its authorization).  (FAC ¶¶ 16-18, 33).

Pounce SA breached the Software Agreement by (i) reproducing, sharing, and using Cadence's software without Cadence's authorization, (ii) bypassing the license file entry and not using valid license files, (iii) taking actions to circumvent the entry of license file information, (iv) continuing to use Cadence's software for commercial purposes without a valid license, (v) installing Cadence's software without authorization, (vi) not paying any license fee, (vii) allowing Cadence's software to be used or copied by unlicensed persons and (viii) failing to take reasonable steps and exercise due diligence to protect Cadence's software from unauthorized reproduction, publication or distribution.  (FAC ¶¶ 57, 92).  Cadence has been damaged by Pounce SA's breach in the form of unpaid license fees.  (FAC ¶ 93).

This case is analogous to *AWR Corp. v. ZTE, Corp.*, et al., No. CV 10-5790 PA (SHx), 2011 WL 13217534 (C.D. Cal. June 13, 2011).  The plaintiff in *AWR*, a software firm specializing in electronic design automation software, sued the defendant for breach of a Software License Agreement ("SLA") (which the defendant had to accept prior to installing the software) based on the defendant's use of "unauthorized 'cracked' key codes to access its software and by failing to destroy or return the software" as required by the contract.  *Id.* at *1-2.  The plaintiff also used a "phone home" feature that "reports [the software] version, its serial number . . . as well as the MAC address and IP address of the computer running the software."  *Id.* at *2.  The Court entered summary judgment of breach of the SLA based on phone home data showing unauthorized use of plaintiff's software by MAC addresses and IP addresses associated with the defendant.  *Id.* at *4-7.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
4:17-cv-04732-PJH

Here, like in *AWR*, Pounce SA entered into a binding contract by clicking "I accept" when presented with the Software Agreement. (FAC ¶¶ 31, 34, 91). Moreover, like in *AWR*, Cadence's phone home reports show MAC addresses and IP addresses (and more) tying unauthorized reproductions and use of Cadence Software to Pounce SA. (*Id.* ¶¶ 62-68).

Cadence has stated a claim for breach of contract.

*     *     *

These factors weigh in favor of granting default judgment.

### 3) Factor (4): Sum of Money at Stake

The fourth *Eitel* factor balances the amount of money at stake with the seriousness of the defendant's conduct. *NexRep, LLC.*, 2017 U.S. Dist. LEXIS 53957, at *10-*11. Default judgment is appropriate when the sum of money at stake is tailored to the specific misconduct of the defendant. *Id.* at *11. The Court may consider a plaintiff's declarations, calculations and other documentations of damages. *Id.*

Here, the damages sought by Cadence are supported by declarations and are tailored to Pounce SA's specific misconduct. As detailed below, the amount of damages sought is equal to the sum of the following:

- **$1,085,642.99** for the value of license fees that would be owed had Pounce SA properly sought and obtained a licenses for its unauthorized use ($783,310) and prejudgment interest ($302,332.99);

- **$130,294** for attorneys' fees in prosecuting this action; and

- **$17,332,000** for statutory damages under 17 U.S.C. 1203(c)(3)(A) for the 6,933 known DMCA violations committed by Pounce SA at $2,500 per act of circumvention.

These damages figures are discussed at length under the heading of "Damages" below. Pounce SA's misconduct warrants the full relief sought by Cadence.

### 4) Factor (5): Possibility of Dispute Concerning Material Facts

When the plaintiff has filed a well-pleaded complaint alleging the elements necessary to establish its claims, and the Clerk has entered default, the possibility of a dispute as to material facts is unlikely. *NexRep, LLC*, 2017 U.S. Dist. LEXIS 53957, at *12; *Philip Morris U.S.A., Inc. v.*

14

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

*Castworld Prods.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  Further, when "no dispute has been raised regarding the material averments of the complaint . . . the likelihood that any genuine issue may exist is, at best, remote."  *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1051.

As discussed above, Cadence filed a well-pleaded and detailed complaint, but Pounce SA defaulted despite valid service, ample notice and opportunities to respond.  Entry of default judgment is favored under these circumstances.  *NexRep, LLC*, 2017 U.S. Dist. LEXIS 53957, at *12; *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1051; *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1056 (C.D. Cal. 2011) (granting default judgment when the "Defendant has not appeared in this action or asserted any defenses.").

Further, the answer to the FAC filed by Pounce Inc. does not dispute any facts with respect to **Pounce SA**, and no party has otherwise disputed any facts alleged against Pounce SA.  (*See e.g.*, Dkt. No. 41 ¶¶ 1, 2, 3) ("Admit paragraphs 1, 7, 12 [first sentence only], 44 [as to Defendant only], 50-51 [as to Defendant only] . . .") (bracketed language in original).  Rather, Pounce Inc. simply contends that it is not the right party.  (Dkt. No. 41 at 2-3).  Where the appearing defendant disputes its involvement in the underlying conduct without disputing that the violations otherwise occurred, disputes concerning material facts are unlikely.  *See j2 Global Inc. v. Fax87, et al.*, No. 13-05353 DDP (AJWx), 2016 WL 7260588, at *2-3 (C.D. Cal. Dec. 15, 2016) (entering default judgment when opposing party disputed its own involvement in the wrongdoing and claimed lack of knowledge as to the alleged wrongdoing of defaulting defendants).  This factor favors entry of default judgment.

**5)   Factors (6) & (7): Excusable Neglect and Decisions on the Merits**

Although public policy favors a decision on the merits, the existence of Rule 55(b) presupposes that in some instances a decision on the merits is not possible or practical.  *NexRep, LLC*, 2017 U.S. Dist. LEXIS 53957, at *12.  Indeed, a defendant's failure to answer a complaint makes a decision on the merits impractical, if not impossible.  *Id.* at *13.  Similarly, courts favor entry of default judgment when the defendant has been properly served or was aware of the suit.  *Id.*; *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).

/ / /

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Here, Pounce SA has strategically and intentionally elected to default.  There is no question that Pounce SA was properly served.  (Dkt. Nos. 29, 29-1, 29-2).  Indeed, before seeking entry of default, Cadence communicated with Pounce SA's CEO and its in-house counsel, putting Pounce SA on notice of the action, as well as the impending default and default judgment.  (Dkt. Nos. 43-1, 43-2, Exs. E-F).  Cadence's counsel repeatedly warned Pounce SA of its intention to seek default and default judgment if Pounce SA failed to answer the complaint, and there can be no dispute that Pounce SA received (and was aware of) these warnings.  (Dkt. No. 43-2, Exs. E-F).  Cadence's counsel specifically warned Pounce SA's CEO, Mr. Viera, that "we will seek a default judgment (including damages) and we will seek to enforce that judgment in the United States and in Mexico." (Ex. F at 1).  Mr. Viera responded to Cadence's counsel's original email and cannot deny receipt of these warnings.[3]  (Dkt. No. 43-2).  Rather than appear in this case, Mr. Viera took the position that Pounce SA does not do business in the United States.  (Dkt. No. 43-2 at ECF 3).  But that is demonstrably false.  According to Pounce SA's own catalogue of services, it has a "US Corporate" office in San Diego, California (where service was effected), (Ex. D; Dkt. Nos. 29, 29-1, 29-2), and it provides services to many U.S.-based clients.  (Ex. D).  Some of Pounce SA's employees are even "place[d] in the USA as part of [Pounce Inc.'s] staffing services."  (Dkt. No. 41 ¶ 11).  No party disputes these facts or alleges otherwise.

In any event, Pounce SA ignored Cadence's complaint and numerous warnings of default and default judgment.  (Dkt. No. 43, 43-1, Exs. E-F).  Pounce SA cannot possibly demonstrate excusable neglect (nor has it tried to do so), and a decision on the merits is not possible.  Both of these factors favor entry of default judgment.

\*          \*          \*

All of the *Eitel* factors strongly support entry of default judgment against Pounce SA.

**C.  Damages**

Cadence seeks recovery of its actual damages under its breach of contract theory in the form of lost licensing revenue, prejudgment interest, and attorneys' fees.  Cadence also seeks recovery of

---

[3] Pounce Inc. even concedes that Mr. Viera owns Pounce Inc. (which has answered) and has served as an officer of both companies.  (Dkt. No. 41 ¶ 5).

16

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   statutory damages available under 17 U.S.C. § 1203(c)(3)(A). That is, Pounce SA's breach has

2   harmed Cadence by depriving it of licensing revenue due for the use of its software, and forcing it

3   to bring this litigation to recover its reasonable attorneys' fees. *See Yoon Chul Yoo v. Arnold*, 615

4   Fed. Appx. 868, 870 (9th Cir. 2015) (expectation damages available for breach of contract).  Entry

5   of maximum statutory damages provided by the DMCA is also appropriate because Pounce SA's

6   infringement has been willful. *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F. Supp.

7   2d 1284, 1301 (S.D. Fla. 2012) (entering maximum statutory damages under 17 U.S.C.

8   § 1203(c)(3)(A) in default judgment for willful violations of DMCA).  As such, Cadence damages

9   in the amount of $783,310 for lost license fees, $302,332.99 for prejudgment interest, $130,294 for

10  attorneys' fees, and $17,332,000 for DMCA statutory damages.

### 1)   Breach of Contract Damages

12         Cadence submits the Declaration of Vinh Phan to substantiate and quantify Cadence's lost

13  licensing revenue caused by Pounce SA's breach of contract.  Mr. Phan is a Principal Compliance

14  Analyst at Cadence, where he has worked for approximately two-and-a-half years.  (Phan Decl.

15  ¶ 1).  In his role in Cadence's Compliance Department, Mr. Phan is responsible for evaluating

16  "phone home" records for unauthorized use of Cadence Software and determining the number of

17  licenses needed to cover such use.  (*Id.* ¶ 2).  Mr. Phan regularly quantifies damages owed to

18  Cadence by unauthorized users of its software.  (*Id.* ¶ 5).  Mr. Phan has handled over 150 cases in

19  his years of experience at Cadence. (*Id.* ¶ 5).

20         As set forth in Mr. Phan's Declaration, Cadence licenses its software on an annual basis.

21  (*Id..* ¶ 8).  Here, Cadence's "phone home" system has detected 6,933 unauthorized uses of Cadence

22  Software by a total of 26 different machines associated with Pounce SA. (*Id.* ¶ 7).  As explained

23  above these numbers reflect only a fraction of actual uses because offline use might not be detected

24  through the phone home software.  (Alfaro Decl. ¶ 25).  To remain conservative, Mr. Phan

25  determined the number of annual licenses necessary to account for the ***detected*** number of

26  offending machines and specific software programs used by Pounce SA.  Mr. Phan evaluated the

27  distribution of detected unauthorized uses of Cadence Software by each infringing machine to

28  determine how many annual licenses Pounce SA should have purchased.  (Phan Decl. ¶ 8).  For

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
4:17-cv-04732-PJH

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

example, a machine that used Cadence's Allegro software 50 times over the span of 815 days would require three annual licenses to Allegro. (*Id.*). This is consistent with how Cadence licenses its software to authorized customers. (*Id.*).

Based on this methodology, Mr. Phan found that Pounce SA would need 31 annual licenses for Allegro, 34 annual licenses for OrCAD, 15 annual licenses for PSpice, and 36 annual licenses for product options not available in the base license price for these software programs.[4] (Phan Decl. ¶ 8). As shown, Pounce SA would have paid $783,310 for these licenses:

| Usage by Pounce SA | | | |
|---|---|---|---|
| Application Name | Qty | Annual List Price | Total |
| Allegro PCB Designer | 31 | $11,030 | $341,930 |
| OrCAD | 34 | $1,520 | $51,680 |
| PSpice | 15 | $1,980 | $29,700 |
| Product Options | 36 | $10,000 | $360,000 |

**Total       $ 783,310**

Further, under California law, Cadence is entitled to recover prejudgment interest at a rate of 10% annually. Cal. Civ. Code § 3289. Prejudgment interest can be calculated by determining when each Pounce user should have obtained an annual license, assessing that user a licensing fee, and then calculating a simple 10% interest in between the time the license fee would have been due and March 21, 2018. These calculations for prejudgment interest are set forth in the Declaration of Vinh Phan. (*See* Phan Decl. ¶ 11). In sum, prejudgment interest totals $302,332.99.

**2)   DMCA Statutory Damages Pursuant to 17 U.S.C. § 1203(c)(A)(3)**

Cadence also seeks an award of statutory damages in the amount of $17,332,000 for the 6933 *detected* instances of Pounce SA's circumvention of Cadence's software protections systems. Cadence is entitled to statutory damages under 17 U.S.C. § 1203(c)(A)(3) in the amount of $200 to

---

[4] Cadence's list price for its software programs does not include a license to all features in those programs. (Phan Decl. ¶ 9). Instead, Cadence licenses each program at a base level of functionality and then sells additional licenses to unlock non-standard features in its programs. (*Id.*). Based on Pounce SA's use of cracked License Server applications, which control access to these additional features, Mr. Phan determined that Pounce SA would have needed 36 licenses to these non-standard features (i.e., "Product Options"). (*Id.*). The actual value of the features unlocked by cracking the License Server is as high as approximately $123,000. (*Id.*). However, in an effort to be conservative, it is Cadence's normal practice to estimate that each crack of a License Server results in $10,000, which is approximately 1/3 of the value of the most commonly used additional features. (*Id.*).

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

$2,500 per act of circumvention.  Statutory damages are appropriate in a default judgment. *TracFone Wireless*, 843 F. Supp. 2d at 1301 (awarding maximum DMCA statutory damages in default judgment for total of $37,707,500 in statutory damages). In awarding statutory damages, Courts consider similar factors as those considered in the copyright context. including "the expense saved by the defendant in avoiding a licensing agreement; profits reaped by defendant in connection with the infringement; revenues lost to the plaintiff; and the willfulness of the infringement." *Sony Computer Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1074-75 (N.D. Cal. 2005).  "The Court can also consider the goal of discouraging wrongful conduct." *Id.*  Here, the Court should award the maximum amount of statutory damages for a number of reasons.

  *First*, Pounce has avoided paying significant licensing fees through its willful infringement and circumvention.  As noted above, after calculating interest from Cadence's lost licensing revenue, Pounce SA conservatively avoided over a million dollars in license payments to Cadence.

  *Second*, the maximum statutory penalties are warranted here because Pounce SA's willful default prevents Cadence from learning the true scope of Pounce SA's infringement in discovery and attempts to deny Cadence effective recourse through the courts.  As explained above, Pounce refuses to participate in this litigation, thereby preventing Cadence from inspecting computers or otherwise learning the full value of the stolen licenses.  Thus, the full extent of Pounce SA's circumvention is unknown because Cadence's phone home report only captures illicit activity conducted while online.  (Alfaro Decl. ¶ 25).  Similarly, Pounce SA's default prevents Cadence from taking discovery as to profits earned by Pounce SA in using the pirated Cadence figures.  Other courts have similarly awarded maximum statutory damages against defaulting defendants. *TracFone Wireless*, 843 F. Supp. 2d at 1301.

  *Third*, Pounce SA's infringement has been willful.  Pounce SA was notified by Cadence of its unauthorized use as far back as 2014 but nonetheless forged ahead with its piracy.  (*See* Ex. H). Indeed, Pounce SA even tried to mislead Cadence into thinking it deleted all "non conformance cadence" software from "Pounce equipment" while it continued using the Cadence Software, requiring its software engineers to be familiar with Cadence Software, and advertising its ability to use Cadence Software to potential customers.  (Ex. A; Dkt. Nos. 25-8, 25-9).  "Defendant's actions

19

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

were willful and necessitate an award at the maximum statutory amount." *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F. Supp. 2d at 1301.

*Fourth*, the Court should also award the full statutory damages to discourage future wrongful conduct. *Sony Computer*, 406 F. Supp. 2d at 1074-75. Pounce SA has not only thumbed its nose at Cadence's intellectual property and Cadence's efforts to resolve the dispute outside of court, it has also flouted the Court's authority and refused to participate in these proceedings in any capacity. Most recently, Pounce SA refused to attend a court-ordered mediation, in which Pounce Inc. and Cadence participated. (Dkt. No. 53). The full statutory damages are necessary to discourage such extreme disregard of our legal system by software pirates like Pounce SA.

The methodology to calculate statutory damages is simple: each "act of circumvention" is multiplied by the amount of statutory damages. 17 U.S.C. § 1203(c)(A)(3); *Munhwa Broadcasting Corp. v. Create New Tech. Co. Ltd.*, 2015 WL 12747909, at *5 (C.D. Cal. Sept. 2, 2015) ("In calculating the award of statutory damages, courts multiply the rate specified in the DMCA by the number of infringing devices."). As noted above, Pounce SA has accessed Cadence Software at least 6,933 times, as detected through Cadence's phone home system. Each of these 6,933 unauthorized uses constitutes an "act of circumvention" under 17 U.S.C. § 1203(c)(A)(3). *See Stockwire Research Group, Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1268 (S.D. Fla. 2008) ("Plaintiffs may recover for each instance in which an end-user gained access to the [copyrighted material] through unlawful circumvention."); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2012 WL 3306600, at *12-13 (E.D.N.Y. June 13, 2012). Thus, the number of *detected* acts of circumvention (here, 6933) is multiplied by $2500, which results in $17,332,000 in statutory penalties. Again, even this number is conservative, as it does not account for *undetected* acts.

**D.  Attorneys' Fees**

Cadence also respectfully seeks an award of its attorneys' fees, which are awardable for each cause of action. Attorney's fees are available under 17 U.S.C. § 505 to a party that proves copyright infringement, and under 17 U.S.C. §§ 1203(b)(4), (5) for circumvention. Likewise, on the breach of contract claim, § 28 of the Software Agreement authorizes the prevailing party to recover fees. (FAC ¶ 94). Because all of the allegations in Cadence's well-pleaded complaint are

20

taken as true, Cadence is entitled to recovery of its attorneys' fees. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072 (C.D. Cal. 2012) (awarding attorneys' fees in trademark infringement context solely based on allegations in plaintiff's well-pleaded complaint).

As set forth in the accompanying Declaration of Guy Ruttenberg, Cadence has incurred $130,294 in prosecuting this case. (Ruttenberg Decl. ¶¶ 11-24).

\*        \*        \*

In sum, Cadence respectfully requests that the Court enter default judgment with the following damages:

- **$1,085,642.99** for the value of license fees that would be owed had Pounce SA properly sought and obtained a licenses for its unauthorized use ($783,310) and prejudgment interest ($302,332.99);

- **$130,294** for attorneys' fees in prosecuting this action; and

- **$17,332,000** for statutory damages under 17 U.S.C. 1203(c)(3)(A) for the 6,933 known acts of circumvention by Pounce SA.

### E.   Injunctive Relief

"Injunctions are regularly issued pursuant to the Copyright Act and as part of default judgments." *Exec. Corp. v. Oisoon, LLC*, 2017 U.S. Dist. LEXIS 159922, at \*23 (M.D. Tenn. Sept. 28, 2017) (entering injunction under 17 U.S.C. § 1203(b)(1) as part of default judgment; modifications omitted); *Beachbody, LLC v. Jadee Invs. Corp.*, 2017 U.S. Dist. LEXIS 172740, at \*29-\*30 (C.D. Cal. Oct. 18, 2017) (enjoining copyright infringement as part of default judgment). Injunctive relief is also available as a remedy for breach of contract. *Kerbel*, 2012 U.S. Dist. LEXIS 108573, at \*44; *Craigslist, Inc. v. 3taps, Inc.*, No. 3:12-cv-03816-CRB, 2015 U.S. Dist. LEXIS 138796, at \*9-10 (N.D. Cal. Oct. 9, 2015).

A permanent injunction is warranted if (1) the plaintiff will suffer an irreparable injury in the absence of an injunction; (2) there is no adequate remedy at law; (3) the balance of hardships weighs in the plaintiff's favor; and (4) the public interest is best served by issuing an injunction. *Beachbody*, 2017 U.S. Dist. LEXIS 172740, at \*29; *Kerbel*, 2015 U.S. Dist. LEXIS 108573, at \*45 (citing *Geertson Seed Farms v. Johanns*, 570 F.3d 1130, 1136 (9th Cir. 2009)).  The first two

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

factors "describe two sides of the same coin" in that if "the harm being suffered by plaintiff is irreparable, then the remedy at law (monetary damages) is inadequate." *Beachbody*, 2017 U.S. Dist. LEXIS 172740, at *30.  To be sure, "the alleged availability of money damages is not a reason to deny injunctive relief. *Kerbel*, 2012 U.S. Dist. LEXIS 108573, at *45.

Here, Cadence seeks injunctive relief for Pounce SA's continued—and flagrant—copyright infringement, circumvention and breach of the Software Agreement.  (Dkt. No. 25 at 16:27-17:3).

***Irreparable Injury and No Adequate Remedy at Law.***  Cadence will suffer an irreparable injury and have no adequate remedy at law without injunctive relief.  The "clandestine nature" of Pounce SA's actions (*e.g.*, furtively using Cadence's software without a license in disregard of its duty to take reasonable steps and exercise due diligence to protect Cadence's software from unauthorized reproduction, publication or distribution) "makes the extent of [Cadence's] injury difficult to calculate and translate into monetary damages, rendering remedies available at law inadequate." *3taps, Inc.*, 2015 U.S. Dist. LEXIS 138796, at *9-10.  (FAC ¶¶ 57, 92).

Moreover, injunctive relief is particularly appropriate when a defendant has repeatedly ignored cease-and-desists and litigation, and has continued its conduct that constitutes infringement or a breach. *Beachbody*, 2017 U.S. Dist. LEXIS 172740, at *30 ("injunctive relief is particularly appropriate in this case because plaintiff sent defendants [several] notices regarding their unauthorized use of copyrighted [] materials which defendants received and ignored."); *Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (defendants' failure to respond to copyright infringement allegations showed conduct "would result in Plaintiffs' continued exposure to harm with no method of recourse."); *Kerbel*, 2012 U.S. Dist. LEXIS 108573, at *45 (same for breach of contract).  To be sure, Pounce SA has been aware of, and ignored, Cadence's grievances for years, (FAC ¶¶ 70-74, 81, 89; *see also* Dkt. No. 43-2), and its misconduct is ongoing.  (FAC ¶¶ 74, 81, 88).  These factors weigh in favor of Cadence.

***Balance of the Hardships.***  Enjoining conduct that constitutes copyright infringement, circumvention of copyright protections or breach of a valid agreement "imposes no hardship" on the defendant. *E.g.*, *Beachbody, LLC*, 2017 U.S. Dist. LEXIS 172740, at *31 ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

to be infringing, such an argument in defense merits little equitable consideration."); *3taps, Inc.*, 2015 U.S. Dist. LEXIS 138796, at *10 ("Regarding the balance of hardships, Craigslist asserts that it only requests compliance with its TOU, and thus imposes no hardship on Niessen."). Enjoining Pounce SA's flagrant and continued wrongdoing would impose no hardship on Pounce SA.

*Public Interest.* Enjoining Pounce SA's infringement, circumvention and breach is also in the public's interest. *Exec. Corp.*, 2017 U.S. Dist. LEXIS 159922, at *23 ("Given the public interest in upholding copyright protections, injunctions are regularly issued pursuant to the Copyright Act . . . and as part of default judgments."); *Dish Network, LLC v. SatFTA*, 2011 U.S. Dist. LEXIS 25038, at *23 (N.D. Cal. Mar. 9, 2011); *3taps, Inc.*, 2015 U.S. Dist. LEXIS 138796, at *10. Indeed, because this is "primarily a private dispute related to the parties' business relationship," it "has no impact on non-parties [so] the public interest will be at most a neutral factor." *Cazorla v. Hughes*, 2014 U.S. Dist. LEXIS 188404, at *68 (C.D. Cal. Apr. 7, 2014).

Because all four factors strongly favor injunctive relief, Cadence respectfully requests that this Court preliminarily and permanently enjoin and restrain Pounce SA, as well as its officers, directors, agents, employees, and all other individuals, firms, corporations, associations, and partnerships affiliated, associated, or acting in concert with it from using the Cadence Software or any other Cadence software to which they hold no valid license. This injunction mirrors the language of the injunction in Cadence's prayer for relief, tailored to defaulting defendant Pounce SA. (*See* Dkt. No. 25 at 16:27-17:3). The full scope of the proposed injunction appears in the Proposed Judgment submitted herewith.

**F.    Request for Entry of Final Judgment Under Fed. R. Civ. P. 54(b)**

Under Fed. R. Civ. P. 54(b), the Court may "direct entry of a final judgment as to one or more, but fewer than all . . . parties only if the court expressly determines that there is no just reason for delay." Otherwise, "any order or other decision, however designated" is not a final judgment if does not resolve claims against all defendants. Fed. R. Civ. P. 54(b).

Cadence submits that "there is no just reason for delay" and, accordingly asks the Court to enter final judgment against defaulting defendant Pounce SA. Pounce SA has been using Cadence's intellectual property without authorization or royalties for years, and will continue to do

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

so absent an immediate injunction.  Moreover, Pounce SA has ignored Cadence's demands to cease its infringement and unauthorized use, and hidden behind corporate shells.  All the while, Pounce SA is reaping the benefits of Cadence's intellectual property in breach of the Software Agreement.

Entry of a final judgment under Rule 54(b) is particularly warranted where the only appearing defendant (here, Pounce Inc.) does not dispute that wrongful conduct occurred, but only disputes its own involvement in that conduct.  *See j2 Global,* 2016 WL 7260588.

## V.   **CONCLUSION**

For the reasons set forth above, Cadence respectfully requests entry of a default judgment against defaulting defendant Pounce SA with respect to all three counts asserted in the First Amended Complaint.  Cadence specifically seeks a judgment in the amount of $783,310 for compensatory damages, $302,332.99 for pre-judgment interest, $130,294 for attorney's fees, and $17,332,000 in statutory damages under 17 U.S.C. § 1203 (c)(3)(A), totaling $18,547,936.99. Cadence further seeks entry of an injunctive barring all further unauthorized uses of the Cadence Software by Pounce SA.  Finally, Cadence seeks a certification that judgment against Pounce SA is a final one under Fed. R. Civ. P. 54(b).


DATED:  February 15, 2018          By:          */s/ Guy Ruttenberg*

Guy Ruttenberg
RUTTENBERG IP LAW, A PROFESSIONAL
CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260
guy@ruttenbergiplaw.com
*Attorney for Plaintiff*

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**CERTIFICATE OF SERVICE**

I certify that I caused to be served counsel of record on February 15, 2018 with

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF CADENCE

DESIGN SYSTEMS, INC.'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT

POUNCE CONSULTING, S.A. DE C.V. via CM/ECF.

Executed on February 15, 2018 in Minneapolis, Minnesota.

By:     */s/ Guy Ruttenberg*
        GUY RUTTENBERG