1  Frederick K. Taylor (Bar No. 159838)
   E-mail:fred.taylor@procopio.com
2  Adrian Martinez (Bar No. 230840)
   E-mail:adrian.martinez@procopio.com
3  PROCOPIO, CORY, HARGREAVES &
        SAVITCH LLP
4  525 B Street, Suite 2200
   San Diego, CA  92101
5  Telephone: 619.238.1900
   Facsimile: 619.235.0398
6
   Attorneys for Defendant Pounce Consulting, S.A. de C.V., a
7  Mexican Sociedad Anónima de Capital Variable

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10  CADENCE DESIGN SYSTEMS, INC., *a*          Case No. 4:17-CV-04732-PJH
    *Delaware Corporation*,
11                                             **DEFENDANT POUNCE
                                               CONSULTING, S.A. DE C.V.'S
12              Plaintiff,                      REPLY IN SUPPORT OF MOTION
                                               TO SET ASIDE ENTRY OF
13  v.                                         DEFAULT AND MOTION TO QUASH
                                               FOR INSUFFICIENCY OF SERVICE
14  POUNCE CONSULTING, INC., *a California*    OF PROCESS**
    *Corporation*, and POUNCE CONSULTING, S.A.
15  de C.V., *a Mexican Sociedad Anónima de Capital*
    *Variable*,                                Complaint Filed:  August 15, 2017
16                                             Judge:  Hon. Phyllis J. Hamilton
                Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

TABLE OF AUTHORITIES ................................................................................................. ii

4

I.        INTRODUCTION ................................................................................................... 1

5

II.       ARGUMENT ......................................................................................................... 2

6

A.    Plaintiff Failed to Properly Serve PSA ......................................................... 2

7

1.    PSA Could Not Have Been Served at Its San Diego Office as
PSA Does Not Have an Office in San Diego. ................................. 2

8

2.    Plaintiff Failed to Serve PSA Under California Law, and Service
of Process Should Be Under the Hague Service Convention ......... 3

9

10

3.    Plaintiff Failed to Serve PSA in Accordance with Federal Law. ... 5

11

4.    The Burden Should Not be Shifted from Plaintiff to PSA To
Disprove Service As Plaintiff Has Not Shown PSA Had Actual
Notice and Waited Post Default Judgment to Vacate. ................... 6

12

13

B.    The Defective Service on PSA Is Sufficient to Set Aside the Default, but Even
if Service Were Proper, Good Cause Exists to Set Aside the Default in Order to
Decide the Merits of a Case with Potentially $18 Million at Stake. ........... 6

14

15

1.    PSA Did Not Receive Actual Notice of the Complaint Until
After Its Deadline to Respond Had Passed, and Because It Had a
Good Faith Belief That It Was Neither Properly Served nor
Subject to This Court's Jurisdiction, It Did Not "Intentionally"
Default. ............................................................................................ 7

16

17

18

2.    PSA Has Raised a Meritorious Defense on Personal Jurisdiction
Which Plaintiff Has Failed to Rebut, and in Any Case, Several
Other Meritorious Defenses to Plaintiff's Substantive Claims
Exist. ............................................................................................... 11

19

20

3.    Plaintiff Has Not Shown That Its Claims Will Be Prejudiced
Beyond the Potential for Delay. .................................................... 13

21

22

C.    Plaintiff Is Not Entitled to Attorney's Fees When the Court Sets Aside the
Entry of Default Against PSA. ..................................................................... 15

23

III.      CONCLUSION ..................................................................................................... 15

24

25

26

27

28

1

2

<u>**TABLE OF AUTHORITIES**</u>

3

**Page(s)**

4

**FEDERAL CASES**

5

6

*Bancroft & Masters, Inc. v. August Na'l Inc.*
   223 F.3d 1082 (9th Cir. 2000) ...................................................................................11

7

*Bateman v. United States Postal Serv.*
   231 F.3d 1220 (9th Cir. 2000) ................................................................................8, 13

8

9

*Brandt v. Am. Bankers Ins. Co. of Fla.*
   653 F.3d 1108 (9th Cir. 2011) ...................................................................................10

10

11

*Brayton Purcell LLP v. Recordon & Recordon*
   606 F.3d 1124 (9th Cir. 2010) ...................................................................................12

12

*Days Inns Worldwide, Inc. v. Patel*
   445 F.3d 899 (6th Cir. 2006) ......................................................................................1

13

14

*Degen v. United States*
   517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) ...........................................14

15

*Direct Mail Specialists v. Eclat Computerized Technologies, Inc.*
   840 F.2d 685 (9th Cir.1988) ........................................................................................5

16

17

*E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*
   430 F. Supp. 2d 1064 (E.D. Cal. 2005) ...................................................................9, 11

18

19

*Facebook, Inc. v. Pedersen*
   868 F. Supp. 2d 953 (N.D. Cal. 2012) ....................................................................1, 12

20

21

*Falk v. Allen*
   739 F.2d 461 (9th Cir. 1984) .....................................................................................13

22

*Ferrand v. Wisc. Equine Management Servs., Inc.*
   No C 94-1059 SC, 1995 WL 274366 (N.D. Cal. May 5, 1995)..................................15

23

24

*Gregorian v. Izvestia*
   871 F.2d 1515 (9th Cir. 1989) .....................................................................................9

25

26

*Ins. Plc v. Casto Transport, LLC*
   No. 13-CV-01811-BAS DHB, 2014 WL 6088527 (S.D. Cal. Nov. 13, 2014) .............6

27

*JMB Mfg., Inc. v. Child Craft, LLC*
   799 F.3d 780 (7th Cir. 2015) .....................................................................................14

28

*Jones v. Automobile Club of Southern California*
　26 Fed.Appx. 740 (9th Cir.2002) ...................................................................5

*Mason v. Genisco Tech. Corp.*
　960 F.2d 849 (9th Cir. 1992) .......................................................................7

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*
　854 F.2d 1538 (9th Cir. 1988) ...................................................................15

*Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd.*
　507 U.S. 380 (1993) ...................................................................................11

*Precision Glassworks, Inc. v. Ghannam*
　Case No. 15-cv-3227-HSG, 2016 WL 2641475 (N.D. Cal. May 10, 2016) ...............11

*Quach v. Cross*
　CV 03-09627 GAF, 2004 WL 2862285 (C.D. Cal. Dec. 3, 2004)....................7, 9

*Ruyan Inv. Holdings Ltd. v. Logic Tech. Dev. LLC*
　CV125482GAFFFMX, 2012 WL 13014608 (C.D. Cal. Oct. 17, 2012) ......................9

*S.E.C. v. Internet Solutions for Bus. Inc.*
　509 F.3d 1161 (9th Cir. 2007) .................................................................6, 7

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*
　24 F.3d 1088 (9th Cir. 1994) (en banc) ....................................................13

*Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*
　614 F.2d 1247 (9th Cir. 1980) ...............................................................7, 11

*Thompson v. American Home Assur. Co.*
　95 F.3d 429 (6th Cir. 1994) ......................................................................13

*Top Form Mills, Inc. v. Sociedad Nacionale Industria Applicazioni Viscosa*
　428 F.Supp. 1237 (S.D.N.Y.1977) ..............................................................5

*U.S. v. Cannon*
　CV 11-06461-KAW, 2013 WL 6700254 (N.D. Cal. Dec. 19, 2013).....................7

*United States v. Signed Personal Check No. 730 of Yurban S. Mesle (Mesle)*
　615 F.3d 1085 (9th Cir. 2010) .........................................................8, 10, 11

*Veeck v. Commodity Enters., Inc.*
　487 F.2d 423 (9th Cir. 1973) ....................................................................7

*Via Techs., Inc. v. Asus Computer Intl.*
　14-CV-03586-BLF, 2015 WL 496797 (N.D. Cal. Feb. 3, 2015).......................8, 9

*Volkswagenwerk Aktiengesellschaft v. Schlunk*
　486 US 694 (1988) .....................................................................................4

1

**CALIFORNIA CASES**

2

*Evartt v. Sup.Ct. of Stanislaus County*
    89 Cal.App.3d 795 (1979) ............................................................................................4

3

4

**FEDERAL STATUTES, REGULATIONS, AND RULES**

5

United States Code, Title 17
    § 507(b) ............................................................................................13

6

F.R.C.P. Rule 4 ............................................................................................3

7

Federal Rules of Civil Procedure
    Rule 60(b)(4) ............................................................................................7

8

9

**CALIFORNIA STATUTES, REGULATIONS, AND RULES**

10

Cal. Code Civ. Proc. § 416.10 ............................................................................3, 4

11

California Code of Civil Procedure
    § 415.20(a) ............................................................................................4, 6

12

13

**OTHER STATE STATUTES, REGULATIONS, AND RULES**

14

Rule 4............................................................................................6

15

Rule 60(b)............................................................................................15

16

Viera Dec. 8............................................................................................3

17

**OTHER AUTHORITIES**

18

Pounce Electronics S.A. de C.V. and Pounce Capital Group. The "US Corporate"............................3

19

20

21

22

23

24

25

26

27

28

I.      **INTRODUCTION**

Instead of having this case be resolved on the merits, Plaintiff seeks a windfall $18 million judgment which it hopes can be transformed into an alter ego judgment against Defendant Pounce Consulting Inc. ("PI"), and then enforced against Pounce Consulting S.A. ("PSA") in Mexico.   To achieve this windfall, Plaintiff overstates too many factual and legal positions than can be reasonably addressed in this Reply.   As a first example, Plaintiff repeatedly conflates PSA and PI as if it has conclusively proven that they are alter egos.   No depositions have been taken in this case, and the declarations submitted by PSA provide evidence the companies are not alter egos.

Plaintiff also makes the assertive claim that PSA directed a witness to spoliate evidence. D66, p. 28.  Plaintiff claims that the receptionist it attempted to serve, Ms. Thania Herrera, altered her online LinkedIn profile to change her employment status *at the direction* of PSA. *See*, D66, p. 28. Plaintiff cites to Exs. H (D66-9) and T (D66-21) as showing an alteration occurred to Herrera's LinkedIn account.   However, those documents do not show an alteration of her LinkedIn account at all; Ex. T appears to be her LinkedIn page, while Ex. H appears to be her *Facebook* page.

Plaintiff also informed the Court that PSA had "altogether refused to participate in discovery" citing to Ex. B (D66-3.).   *See* D66, p. 28.   However, PSA was only first served with discovery on March 14, 2018, and its responses are not due until April 13. *See* Taylor Dec., Ex. A, B.   More importantly, the exhibit which purports to show an "altogether refusal" by PSA is PI's responses to interrogatories.   *See*, D66-3.  It is incomprehensible that that document shows a lack of participation by PSA.  Further, PSA's counsel conveyed to Plaintiff that it was not willing to risk waiving personal jurisdiction by participating substantively in the case, including through mediation.  D66-6, pp. 4-5. PSA's counsel supported this position with authority.  *Id.*, citing *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006) (personal jurisdiction waived by voluntary participation in the merits of case.)

As a last example, Plaintiff informed this Court that one of PI's lawyers stated that "PSA was the true wrongdoer." D66, p. 7, citing Ex. A; D66-2 at 2.   That correspondence from Mr. Seth Darmstadter does not state that PSA is the true wrongdoer.   In fact, Mr. Darmstadter specifically states "I do not suggest that Pounce Mexico is an appropriate party or that it has any liability.  I

frankly do not know."  D66-2, at 3.

The verve by Plaintiff to obtain a judgment has extended past this attempted windfall and into its discovery conduct.  For example, Plaintiff recently served *three* deposition notices for third party witnesses to occur on April 5, 2018, at 9:00 a.m.  Scheduling depositions is normally a mundane part of litigation.  However, Plaintiff has scheduled those depositions to take place on that date, all at the same time in: Santa Barbara, California; Seattle, Washington; and Middleton, Wisconsin. *See*, Taylor Dec., Exs. C, D, and E.  This seems unnecessarily inconvenient.

In any case, this motion should be granted because the service by Plaintiff was defective and should be quashed.  The attempted service on an employee of another company at a location where PSA does not have an office fails.  Plaintiff has known that PSA had its principal place of business in Mexico.  Its own complaint states that.  Yet plaintiff has never attempted to serve PSA there. Further, with the defective service, the default must be set aside.  This case is at its infancy, with no depositions having been taken.  There would be no prejudice to Plaintiff.

## II.   ARGUMENT

### A.   Plaintiff Failed to Properly Serve PSA.

PSA has clearly shown that Plaintiff failed to serve anyone on behalf of PSA.  While the signed return service is generally prima facie evidence that service was valid, PSA has shown that the person and place served did not provide actual notice to PSA.  Plaintiff failed to properly serve PSA under California and federal law, and its own evidence undermines its argument that PSA is located in San Diego, California.

#### 1.   PSA Could Not Have Been Served at Its San Diego Office as PSA Does Not Have an Office in San Diego.

Plaintiff solely based its service on the fact that an address in San Diego appears as a "US Corporate" location on the consolidated companies' website, pouncecorp.com (the "Site").  However, that address is in reference to PI's location.  PSA and PI are entities within a conglomeration of companies that share branding of the name "Pounce" and share the following internet domains, pouncecorp.com and pounceconsulting.com.  Viera Dec. ¶5.  Overall there all several "Pounce" entities that share these websites in addition to PSA and PI including, Pounce Electronics S.A. de

C.V. and Pounce Capital Group.  The "US Corporate" address (*see* D29-2) is merely reflective of the fact that one of the "Pounce" entities, PI, does business at that location.  Indeed, PI's Silverton Avenue address appears on the Site because the Site is the homepage for multiple companies that use the tradename "Pounce."  Plaintiff further argues with PSA's statements as to its "principal place of business."  D66 at 4:3-6.  Ironically, Plaintiff first used this exact language in paragraph four of its FAC, "with its principal place of business at Av. 8 De Julio No. 1295, Col. Modernat 44190, Guadalajara, Mexico."  D25 ¶4.  Similarly, any statements that Viera has made in public regarding the San Diego address are merely reflective of a location for one of the "Pounce" branded companies, PI.  Viera Dec. 8.  During the same discussion referenced in Plaintiff's opposition (D66 at 9; youtube.com/watch?v=PQBKprOrT9w), Viera repeatedly stated that the design and manufacture elements of Pounce occur in Mexico.  These references are located at 1:24; 2:49; 4:23 and 9:25 of the video.  Viera Dec. ¶8.

<ol start="2">
<li><b><u>Plaintiff Failed to Serve PSA Under California Law, and Service of Process Should Be Under the Hague Service Convention.</u></b></li>
</ol>

Plaintiff failed to properly serve PSA in accordance with California law.  California law permits a summons to be served on a corporation by delivering a copy of the summons and the complaint "[t]o the person designated as agent for service of process," or "[t]o the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive a service of process ...."  Cal. Code Civ. Proc. § 416.10.  Plaintiff submitted two proofs of service in support of its assertion that it has properly served PSA.  D29.  The first proof of service states Mark Brown of First Legal served via substituted service "Thania Herrera, office Administrator, authorized to accept served under F.R.C.P. Rule 4" for PSA at 7960 Silverton Avenue, Suite 113, San Diego, California 92126.  D29-1 at 2.  The second proof of service is for mail service to the Silverton address.  D29-1 at 3.  However, Herrera was never an Office Administrator "in the structure of" PSA; Herrera worked in PI's office at the time of service, not PSA's; and PSA did not have an office at the location Herrera was working when she was served, as it was not a shared office between PI and PSA  Plaintiff knew on or before November 9, 2017 that Herrera was a PI employee, as she was listed as PI's employee in

its Initial Disclosures.  D66-12 at 2:7.  Plaintiff's focus on Herrera's title is misplaced, as it is not Herrera's title that is in issue but the company she worked for, and her lack of any official connection to PSA.  Plaintiff's service of process on Herrera was not proper service as to PSA and was not transmitted to PSA by Herrera or PI.  Viera Dec. ¶11.

California law further states that if a corporation cannot be served directly under Section 416.10, substitute service may be effected.  Cal.Code Civ. Proc. § 415.20(a) (detailing the process for substitute service of an entity).  Plaintiff claims to have utilized substitute service to effect service on PSA through Herrera.  However, before substitute service is permitted, Plaintiffs must be reasonably diligent in their attempts at direct service.  *Evartt v. Sup.Ct. of Stanislaus County*, 89 Cal.App.3d 795, 799 (1979).  The burden is on the plaintiff to show reasonable diligence.  *Id*. at 801.  Plaintiff has not made any attempts at direct service.[1]  Therefore, Plaintiff did not use reasonable diligence to serve PSA before utilizing substitute service and substitute service was ineffective.

Plaintiff needed to undertake the appropriate procedural steps required by international law to serve PSA as a foreign corporation.  "The rules for serving persons in foreign countries are expressly subject to the Hague Service Convention."  CCP 413.10 (c), last sentence.  The Hague Service Convention governs service of summons on persons in foreign countries that have signed the treaty.  State and federal service rules for service in those countries are preempted.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 US 694, 699 (1988).  The Hague Service Convention has been signed by over 50 countries including the U.S. and Mexico.  *See* travel.state.gov/content/travel.html.  The FAC alleges the address of PSA at Av. 8 De Julio No. 1295, Col. Modernat 44190, Guadalajara, Mexico."  D25 ¶4.  Plaintiff also stated in its FAC that Viera is the Chief Executive Officer of PSA D25 ¶9.  Plaintiff knew on or before November 9, 2017 that Viera was also located in Jalisco, Mexico as PI provided Viera's address in its Initial Disclosures.  D66-12 at 2:7.  Therefore, PSA, or Viera on behalf of PSA should have been served strictly under the methods prescribed under the Hague Service Convention.

---

[1] Exhibit N to Plaintiff's Opposition, while labeled Affidavit of Due Diligence, is not related to the service of process of PSA.

### 3.   **Plaintiff Failed to Serve PSA in Accordance with Federal Law.**

In the Ninth Circuit, "service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process." *Direct Mail Specialists v. Eclat Computerized Technologies, Inc*., 840 F.2d 685, 688 (9th Cir.1988).  Service must be made "'upon a representative so integrated with the organization that he will know what to do with the papers.'"  *Id*.  (citing *Top Form Mills, Inc. v. Sociedad Nacionale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1251 (S.D.N.Y.1977)).  Service on an individual who holds a position that indicates authority **within the organization** generally is sufficient.  *Direct Mail Specialists*, 840 F.2d at 688 (emphasis added).  First, the receptionist worked in a shared office of Defendant Eclat (the corporation being served) and CT.  Second, the shared office was very small and the role played by the receptionist was "commensurately large in the structure of the company." *Id*. at 688.  Lastly, the court had uncontroverted evidence that the defendant had knowledge of the service of process within a day of serving the receptionist.  "The differences between this case and *Direct Mail* are greater than the similarities." *Jones v. Automobile Club of Southern California*, 26 Fed.Appx. 740 (9th Cir.2002)  First, there is no evidence that PSA is a small association.  Most importantly, unlike the receptionist in *Direct Mail*, Herrera is not an employee of the defendant, PSA, the Plaintiff was trying to serve.  Contrary to any of Plaintiff's assertions the Court in *Jones* clarified that whether the person is an employee is relevant to the analysis.  *Jones*, 26 Fed.Appx at 743.

Plaintiff's cited cases all indicate that proper service may be garnered by serving process of summons on someone who "stands in a position to render it fair, reasonable and just to imply authority on his part to receive service" (*id*.) at a location where you would likely find the defendant.  However, Herrera is not and was not an office administrator for PSA; Herrera worked in PI's office, not PSA's; and PSA did not have an office at that location.  Plaintiff's focus on Herrera's title is misplaced, as it is not Herrera's title that is in issue but the company she worked for and her lack of any official connection to PSA.  Contrary to Plaintiff's assertions PSA has not received the documents served on Herrera from Herrera or from PI.  Viera Dec. ¶ 11.

1

    4.    **The Burden Should Not be Shifted from Plaintiff to PSA To Disprove Service As Plaintiff Has Not Shown PSA Had Actual Notice and Waited Post Default Judgment to Vacate.**

2

3        Plaintiff has not substantially complied with Rule 4 and the burden to show lack of service

4  should not shift to PSA as it was not aware of the proceedings until it was too late to timely respond.

5  Contrary to Plaintiff's claims, PSA had not "received actual or constructive notice of the filing of the

6  action and failed to answer." D66 at 16:5-8.  Plaintiff cites to *Royal & Sun alliance Ins. Plc v. Casto*

7  *Transport, LLC* No. 13-CV-01811-BAS DHB, 2014 WL 6088527, at *2 (S.D. Cal. Nov. 13, 2014)

8  asserting that PSA has the burden of proving that service did not occur.  While Plaintiff may have

9  seen the above cite in *Royal, Royal* was actually citing *S.E.C. v. Internet Solutions* in which the court

10  held that a defendant who has actual notice of the original proceedings but waits to move post-default

11  judgment to vacate based on improper service bears the burden of disproving service.  *S.E.C. v.*

12  *Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007).  PSA is not in the position

13  described in *S.E.C.* and filed its motion in the "original proceedings," therefore the burden should not

14  be shifted to PSA to disprove service.  Furthermore, the evidence submitted by Plaintiff clearly

15  shows that PSA's knowledge of the "original proceedings" came directly from Plaintiff's counsel.

16  PSA first learned of this action from Plaintiff's counsel through its contact with Viera on November

17  28, 2017, the day after any responsive pleading was due.  *See* D43-2 at 2; Viera Dec. ¶¶ 10-11.  PSA

18  did not have knowledge of the action within the time frame to file a response.  *Id*.  Furthermore,

19  Plaintiff's counsel only provided PSA one day's notice before filing for default.  *Id*.  Contrary to

20  Plaintiff's claims PSA does not have to prove it was not served just because it garnered knowledge of

21  the proceedings after the applicable time period to respond.  Had the Court entered a default

22  judgment before PSA made its special appearance the circumstances may have shifted the burden to

23  PSA as *S.E.C.* suggests.  However, that is not the case here and the burden remains with Plaintiff to

24  show that it has properly served PSA.

25

    B.    **The Defective Service on PSA Is Sufficient to Set Aside the Default, but Even if Service Were Proper, Good Cause Exists to Set Aside the Default in Order to Decide the Merits of a Case with Potentially $18 Million at Stake.**

26

27        The Court should set aside the default because PSA has still not been properly served in this

28  case.  A plaintiff's failure to properly serve defendant with process constitutes good cause to set aside

entry of default.  *See Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 425-26 (9th Cir. 1973) (failure to serve properly constituted a lack of jurisdiction to enter default judgment, thus default judgment was set aside); *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) (default judgment is void where a plaintiff fails to serve process properly).  Although Plaintiff's Opposition brief appears to take issue with the specific types of service defects involved in *Veeck* and *Mason* (D66 at 20, n.7), these are distinctions without a difference.  Without proper service, the Court lacks personal jurisdiction over PSA, and any judgment entered against it would be void.  *S.E.C.*, 509 F.3d at 1165 (a default judgment is void where the court lacks personal jurisdiction due to insufficient service).

Unlike a motion to set aside default judgment for equitable reasons, there is no discretion for a district court to exercise under Rule 60(b)(4); either a judgment is void or it is valid.  *Thomas P. Gonzales Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1256 (9th Cir. 1980).  Although no judgment has been rendered yet against PSA, the principles that apply in the default judgment situation apply with equal force in cases involving the clerk's entry of default.  *Quach v. Cross*, CV 03-09627 GAF, 2004 WL 2862285, at *1 (C.D. Cal. Dec. 3, 2004) (setting aside default where defendant was not properly served).  Therefore, in such an instance, a district court need not consider the culpability of the defendant, the merits of the defense, or the prejudice to the plaintiff.  *U.S. v. Cannon*, CV 11-06461-KAW, 2013 WL 6700254, at *2 (N.D. Cal. Dec. 19, 2013).  Nevertheless, as PSA showed in its moving papers, each of these three factors weigh strongly in favor of setting aside the default.

1.   **PSA Did Not Receive Actual Notice of the Complaint Until After Its Deadline to Respond Had Passed, and Because It Had a Good Faith Belief That It Was Neither Properly Served nor Subject to This Court's Jurisdiction, It Did Not "Intentionally" Default.**

Contrary to Plaintiff's suggestion, PSA never received actual notice of the FAC until Plaintiff emailed Viera the day before seeking default.  Plaintiff argues "there is no dispute that Ms. Herrera actually forwarded the Summons and Complaint to the relevant officers of the company," (D66 at 21:19-20), but it fails to cite any evidence to support this bald contention.  Though it may be true that PSA has not yet disputed this point, this is only because it has never been raised.  And in fact, Viera confirms that PSA never received a copy of the FAC from either Herrera or PI.  Viera Dec. ¶ 11.

PSA further disputes Plaintiff's suggestion that PSA had actual notice of the FAC "through its sister company, PI."  *See* D66 at 21:18-19.  PI and PSA are separate entities with their own management and board of directors.  Viera Dec., ¶ 7.  The two companies operate independently from each other. Viera Dec., ¶ 7.  Notice to PI cannot be automatically imputed to a separate and distinct entity, particularly one located and operating in a different country like PSA.

Plaintiff further insists that PSA's conduct was culpable because it "intentionally" failed to answer.  Showing "intentionality," however, requires more than a mere "conscious choice not to answer." *United States v. Signed Personal Check No. 730 of Yurban S. Mesle (Mesle)*, 615 F.3d 1085, 1092 (9th Cir. 2010).  Rather, "the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *Id.*  Indeed, there is no "culpable" conduct where defendant offers "a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001)).  The Ninth Circuit has adopted a forgiving approach, accepting even "weak" reasons if they reveal mere "negligence and carelessness, not...deviousness or willfulness." *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000).  In *Bateman*, an attorney was excused from his failure to timely file a pleading because he had to leave the country on fairly short notice and, upon his return, suffered from jet lag and took some time to sort through his mail. *Id.*  Although this was a "weak" reason, it was still enough to warrant relief. *Id.*

Plaintiff suggests that because PSA is a corporation large enough to potentially be considered a sophisticated party, the Court should assume that PSA acted with "intentionality."  But even if the Court were to find PSA to be sufficiently sophisticated, the presumption is rebuttable.  *See Via Techs., Inc. v. Asus Computer Intl.*, 14-CV-03586-BLF, 2015 WL 496797, at *3 (N.D. Cal. Feb. 3, 2015).  While PSA may be sophisticated with respect to the Mexican legal system, it was not represented by American counsel at the time it first received notice of the FAC.  Plaintiff again conflates PI with PSA by referring to the American counsel of Seth Darmstadter.  *See* D66 at 22:4-6. Mr. Darmstadter specifically informed Plaintiff's counsel that he represented "Pounce Consulting

Reply ISO Motion To Set Aside Entry Of Default And Motion To Quash

Inc." and was "not retained as Pounce Mexico's lawyer." D66-2 at 3, 7.  He also noted he had "no idea" regarding the details of "Pounce Mexico's relationship with [Plaintiff]."  *Id.* at 3.  Tellingly, none of the cases cited by Plaintiff involved foreign defendants, let alone defendants represented by only foreign in-house counsel at the time the default was taken.  *See* D66 at 21:10-16.  This case is more analogous to *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 430 F. Supp. 2d 1064, 1089 (E.D. Cal. 2005).  There, the court set aside a default and declined to find defendant as "sophisticated" where "nothing in the record indicate[d] that [defendant], an Italian Company with limited business in the United States was familiar with legal processes in the United States or, apart from this case, that [defendant] was or ever has been involved in litigation in the federal courts."  *Id.*  As a Mexican corporation with no business location in the United States or American counsel at the time of the entry of default, PSA cannot be held to the level of legal "sophistication" to presume intentionality.

Moreover, Plaintiff's insinuations of "bad faith" strategizing by PSA defy logic.  Even if the Court were to assume that PSA "understood the consequences of not responding to the district court complaint, purposefully failing to respond" would make "no legal or business sense."  *Id.* at 1090. Indeed, if PSA was represented by American counsel and knew that its failure to answer the FAC could potentially result in a default judgment against it for over $18 million, as Plaintiff has requested in its motion seeking entry of default judgment (*see* D55-1), it obviously would have responded differently, such as through entering an appearance for the limited purpose of contesting the purported service of process.  Instead, PSA's actions were driven by the reasonable good faith belief that it had not been properly made a part of this case and that, in any case, it was not subject to this Court's jurisdiction.  A foreign defendant's "reasonable belief" that it was "not subject to jurisdiction in United States courts" may "undercut[] any argument that the [foreign] defendants is 'culpable' in not appearing to defend the action.  *Gregorian v. Izvestia*, 871 F.2d 1515, 1525–26 (9th Cir. 1989); *see also Quach*, 2004 WL 2862285, at *7 (finding excusable neglect where defaulted party failed to respond because they felt they were improperly served); *see also Ruyan Inv. Holdings Ltd. v. Logic Tech. Dev. LLC*, CV125482GAFFFMX, 2012 WL 13014608, at *3 (C.D. Cal. Oct. 17, 2012) (declining to find defendant culpable even where defendant's attorney authorized to accept service was served, because attorney "did not believe process had been properly served" and did not inform

1   defendant of service).

2   To be sure, PSA had no intention to take advantage of Plaintiff, to interfere with judicial

3   decision making, or to otherwise manipulate the legal process. *See Mesle*, 615 F.3d at 1092. Quite

4   the contrary, PSA promptly and consistently informed Plaintiff of its reasoning on why it was not

5   answering the Complaint. As the record shows, Viera responded on the same day that Plaintiff first

6   sent him an email with a copy of the Complaint on November 28, 2017, stating that PSA is "located

7   in GDL Mexico" and does "not operate in the USA at all." D43-2. Viera further advised Plaintiff

8   that because of this lack of connection to the U.S., Plaintiff would likely "need to contact [PSA's]

9   legal department in Mexico" and file a complaint in Mexican Court. *Id.* As discussed previously,

10  Viera was correct in his belief that a California court lacked jurisdiction over PSA and that PSA had

11  not been properly served. Viera Dec., ¶ 10. On January 3, 2018, Viera promptly responded to

12  another email from Plaintiff and reiterated PSA's belief that Plaintiff would need to address its claims

13  in Mexico. Viera Dec., ¶ 12. Despite its accurate and good faith belief, PSA nevertheless initiated a

14  search for U.S. counsel to provide advice on the matter. Viera Dec., ¶¶ 12-13. Moreover, in the two

15  months preceding these motions, PSA corresponded with Plaintiff's counsel in "an informal effort to

16  implore Plaintiff to pursue what [PSA] believed were the proper legal channels for claims against

17  Pounce, SA." Viera Dec. at ¶ 15. PSA never hid the ball from Plaintiff about the reasoning for why

18  it did not answer the FAC, and it has never had any intention manipulate the legal process.

19  Plaintiff accuses PSA of engaging in bad faith conduct by taking "inconsistent and

20  implausible positions." But each of the purported "inconsistencies" identified by Plaintiff *at most*

21  involve discrepancies from what the *other* Defendant, PI, has said. *See*, *e.g.*, D66 at 23:5-8, 12-13).

22  The two Defendants are separate entities operating independently from each other and without

23  control of each other. Viera Dec. at ¶ 7. Accordingly, PSA cannot be bound by the statements or

24  actions of PI. Plaintiff's persistent conflation of the two Defendants only undercuts its argument.

25  But even if the Court were inclined to find that PSA was somehow culpable, the Court still

26  has discretion to set aside the default where, as here, there is "a meritorious defense and any

27  prejudice can be cured." *See Brandt v. Am. Bankers Ins. Co. of Fla*., 653 F.3d 1108, 1112-13 (9th

28  Cir. 2011); *see also Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd*., 507 U.S. 380, 395 (1993)

(inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.").  Because the two other factors weigh strongly in PSA's favor, any finding of culpability on PSA's part should not preclude relief from the entry of default.

2. **PSA Has Raised a Meritorious Defense on Personal Jurisdiction Which Plaintiff Has Failed to Rebut, and in Any Case, Several Other Meritorious Defenses to Plaintiff's Substantive Claims Exist.**

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." *TCI Grp.*, 244 F.3d at 700.  This burden "is not extraordinarily heavy." *Mesle*, 615 F.3d at 1094; *see also id.* (explaining the "minimal nature of the burden").  The law does not require that defendant show it will prevail on its defense. *E. & J. Gallo Winery*, 430 F. Supp. 2d at 1092.  Indeed, a "defendant's burden is satisfied by allegations of facts contained in the briefing itself." *Precision Glassworks, Inc. v. Ghannam*, Case No. 15-cv-3227-HSG, 2016 WL 2641475, at *2 (N.D. Cal. May 10, 2016) (allegations in the moving papers sufficient to demonstrate meritorious defenses to copyright infringement claim).

Plaintiff, as the party invoking the court's jurisdiction, has the burden of proving the existence of personal jurisdiction in opposition to PSA's motion to set aside a default judgment. *See Thomas P. Gonzalez Corp.*, 614 F2d at 1256.  However, none of Plaintiff's arguments sufficiently establish personal jurisdiction, particularly in light of the facts set forth by PSA.  First, contrary to Plaintiff's suggestion, California courts lack general jurisdiction over PSA, because its contacts with the forum do not qualify as either substantial or continuous and systematic. *See also Bancroft & Masters, Inc. v. August Na'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Although Plaintiff points to a variety of outdated statements online – including from the *other* Defendant, PI – Plaintiff cannot refute the sworn declarations of Yolanda Maria Jose Viera Pillado and Llera establishing facts to the contrary. *See* D59-1 at ¶¶ 9-16; D59-2 at ¶¶ 3-5.

Second, Plaintiff relies on the terms and conditions of the Plaintiff Software License Agreement as evidence that PSA consented to personal jurisdiction, but Plaintiff fails to point to *any* evidence that PSA actually received a copy of License Agreement or its terms and conditions. *See* D66 at 26:10-19.  In fact, Plaintiff has alleged that Pounce used "cracked" (i.e., counterfeited) versions of the Plaintiff software. *See, e.g.*, D25 at ¶¶ 13, 47.  If this were the case, PSA may not

1  have ever seen such terms and conditions consenting to personal jurisdiction.  If Pounce installed

2  unlicensed versions of software, and it did not have a license to install the software, it certainly did

3  not agree to any license terms.

4          Third, while Plaintiff relies on the "purposeful direction" of activities standard to establish

5  specific jurisdiction, this only applies where both parties are in "direct competition" for "the business

6  of the same set of potential customers."  *Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 959-60

7  (N.D. Cal. 2012) (distinguishing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th

8  Cir. 2010) and finding that the defendants did not expressly aim their conduct at California because

9  the parties did not compete "for exactly the same users").  Here, like in *Facebook*, PSA has not

10  individually targeted Plaintiff, and therefore this forum, because the parties were not competing for

11  the same set of potential customers.  Plaintiff licenses software products to "help engineers design the

12  transistors, standard cells, and IP blocks that make up systems on chips," and its offerings "allow

13  engineers to design integrated circuits and printed circuit boards."  D25 at ¶¶ 16-17.  On the other

14  hand, Plaintiff alleges that Pounce "focuses on providing custom solutions in embedded design,

15  electronics manufacturing, IT, and staffing services."  *Id.* at 25.  And according to Viera, PSA,

16  actually "designs computer chip and related software and hardware" and "specializes in the

17  manufacturing of plastics, metals, lighting equipment and energy meters."  Viera Dec. at ¶ 3.  In

18  short, Plaintiff is in the business of designing and licensing the software for companies like PSA,

19  who in turn design the actual computer chips for use in specific manufacturing sectors.  Thus, PSA

20  targets a completely different set of customers from Plaintiff, so their activities were not purposefully

21  directed toward Plaintiff and this forum to establish specific jurisdiction under *Brayton Purcell.*

22          Plaintiff further suggests, without authority, that PSA was obligated under this meritorious

23  defense factor to articulate defenses to Plaintiff's substantive claims for copyright infringement,

24  DMCA violations, and breach of contract.  D66 at 25:5-14.  Although PSA does not believe it was

25  required to present any such substantive defenses in light of its defective service and personal

26  jurisdiction defenses, several substantive defenses to the claims have merit as well.  First, it is

27  unlikely that Plaintiff will be able to prevail on its claim for copyright infringement against PSA in

28  light of the fact that the alleged use of the copyright occurred outside of the United States.  As Ms.

1    Viera Pillado's and Viera's declarations show, PSA is based in Mexico and the design and

2    manufacture elements of its business occur in Mexico.  *See* D59-1 at ¶ 5; Viera Dec. at ¶ 8.  "[I]n

3    general, United States copyright laws do not have extraterritorial effect [and] infringing actions that

4    take place entirely outside the United States are not actionable." *Subafilms, Ltd. v. MGM-Pathe*

5    *Commc'ns Co.*, 24 F.3d 1088, 1092 (9th Cir. 1994) (en banc).  Second, some or all of Plaintiff's

6    copyright infringement claims may be barred by the statute of limitations.  Copyright infringement

7    has a three-year statute of limitations.  17 U.S.C. §507(b).  Citing a September 3, 2014 email,

8    Plaintiff contends in its Motion for Default Judgment that PSA "was notified by [Plaintiff] of its

9    unauthorized use as far back as 2014 but nonetheless forged ahead with its piracy." D55-1 at 25:23-

10   24; D55-6 at 6.  This email was sent over three years before the November 1, 2017, filing of the FAC

11   against PSA  Accordingly, at least some of the infringement asserted by Plaintiff falls outside the

12   three year limitations period, which means that Plaintiff cannot be entitled to the full $18,547,936.99

13   it seeks in damages by default.

14                   3.       **Plaintiff Has Not Shown That Its Claims Will Be Prejudiced Beyond the**
                             **Potential for Delay.**
15

16         To be prejudicial, the setting aside of a judgment must result in greater harm than simply

17   delaying resolution of the case.  *TCI Grp.*, 244 F.3d at 701.  Rather, "the standard is whether

18   [plaintiff's] ability to pursue his claim will be hindered." *Id.* (citing *Falk v. Allen*, 739 F.2d 461, 463

19   (9th Cir. 1984); *see also  Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir.

20   1994) (to be considered prejudicial, "the delay must result in tangible harm such as loss of evidence,

21   increased difficulties of discovery, or greater opportunity for fraud or collusion").  A default

22   judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her

23   claim because of her opponent's failure to respond.  *TCI Grp.*, 244 F.3d at 701.  Vacating the default

24   judgment merely restores the parties to an even footing in the litigation.  *See Bateman*, 231 F.3d at

25   1225 (no prejudice simply because a party loses a quick victory due to an opponent's procedural

26   default and must litigate on the merits).  Depriving Plaintiff of the "windfall" of not having to

27   complete the trial process does not constitute the sort of prejudice that would preclude setting aside

28   the default judgment.  The entry of what could turn out to be over $18 million damages award,

without regard for the merit of the claims, should give this Court serious pause.  *See Degen v. United States*, 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) (finding abuse of discretion in defaulting litigant in $5.5 million civil suit given availability of lesser sanctions, even where litigant was fugitive outside the country).

Although Plaintiff complains that PSA prejudiced Plaintiff "by waiting until late in the case" to bring the instant motion, the case is actually still in its nascent stages.  The non-expert discovery cut-off is still nearly two months away, and expert discovery does not close until August 22, 2018.  *See* D37 at 1.  Plaintiff has already had months to prepare its discovery strategy, even though it claims that it is being forced to "cram everything into the end of discovery."  Even if this were the case, remedies less than "the ultimate sanction of default" are available to the court to redress this perceived prejudice to Plaintiff, including adjusting deadlines.  *See JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 792 (7th Cir. 2015).

Moreover, Plaintiff's arguments with regard to PSA's supposed "spoliation" of evidence are inaccurate and speculative.  And crucially, Plaintiff's arguments represent yet another instance of its conflation of the two Defendants.  For instance, PSA could not have "thwarted" Plaintiff's attempts to depose or subpoena Herrera, since PSA is not her employer.  Moreover, Plaintiff claims that Herrera altered her LinkedIn profile to change her employment status.  But the evidence submitted by Plaintiff (Exs. H and T) do not support this argument.  In fact, Ex. H is not even a LinkedIn profile, but rather a Facebook profile.  Meanwhile, nothing in Ex. T actually says or suggests that Herrera's "employment with Pounce ended in February 2018," as Plaintiff suggests.  Even if there were merit to Plaintiff's contention that Herrera and Pounce have been changing their online presences recently, there is nothing that suggests that these modifications were made by them. There also is nothing wrong with updating inaccurate or obsolete information so long as there is a record of the change.

In any case, this is not the type of "loss of evidence" that is a cause for concern when a default is set aside.  Rather, "the standard is whether [plaintiff's] ability to pursue his claim will be hindered."  *TCI Grp*., 244 F.3d at 701.  The so-called spoliation that Plaintiff points to only relates to its ability to oppose this present default issue, not its ability to pursue its copyright or contract claims.  Plaintiff points to nothing beyond speculation about the loss of evidence relevant to these issues.

1    Plaintiff's argument of prejudice based on delay in obtaining a permanent injunction is

2  similarly misguided.  A mere delay is not prejudice.  *TCI Grp.,* 244 F.3d at 701.  The *Ferrand* case

3  cited by Plaintiff, while denying to set aside the entry of default, relies on additional facts beyond a

4  mere delay for a permanent injunction.  *Ferrand v. Wisc. Equine Management Servs., Inc.*, No C 94-

5  1059 SC, 1995 WL 274366 at *3 (N.D. Cal. May 5, 1995).  In *Ferrand*, Plaintiff had obtained a

6  preliminary injunction and defendant had over seven months before the court decided to grant entry

7  of default, and most notably, found the defendant culpable.  *Id.* As stated above, PSA was not

8  culpable in the default and Plaintiff has not obtained a preliminary injunction and monetary damages

9  would be an adequate remedy.

10    **C.    Plaintiff Is Not Entitled to Attorney's Fees When the Court Sets Aside the Entry**

11    **of Default Against PSA.**

12    The Court should deny Plaintiff's request for sanctions against PSA.  The cases Plaintiff cites

13  do not support it request.  In *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana*

14  *Hydrolec*, 854 F.2d 1538, 1546 (9th Cir. 1988), the court found other circuits have held that Rule

15  60(b) allows courts to condition the setting aside of a default judgment upon payment of attorneys'

16  fees and costs.  The law is clear that this extreme condition is only upon setting aside a default

17  judgment due to the reopening of the litigation and expenses incurred to cure any prejudice the

18  plaintiff has suffered.  Plaintiff has not obtained a default judgment and has not cited authority to

19  support being awarded attorney's fees for setting aside the entry of default.  As stated above, Plaintiff

20  has not and will not be prejudiced by the setting aside of the entry of default.  Furthermore any

21  alleged or perceived prejudice is the result of Plaintiff's failure to properly serve PSA, to provide

22  PSA additional time to respond once Plaintiff's counsel informed it of this action, or to simply

23  continue the mediations in this action until these issues were resolved.

24  **III.    CONCLUSION**

25    Based on the foregoing, PSA respectfully requests that the Court grant its Motion.

26

27

28

1   DATED: March 29, 2018                    PROCOPIO, CORY, HARGREAVES &
                                                SAVITCH LLP
2

3
                                            By:   /s/ Frederick K. Taylor
4                                                 Frederick K. Taylor
                                                  Adrian Martinez
5                                                 Attorneys for Defendant Pounce Consulting,
                                                  S.A. de C.V., a Mexican Sociedad Anónima de
6                                                 Capital Variable

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on March 29, 2018 to all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system.

/s/ Frederick K. Taylor

Frederick K. Taylor
