UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>POUNCE CONSULTING, INC., et al.,<br><br>Defendants. | Case No. 17-cv-04732-PJH (SK)<br><br>**AMENDED REPORT AND RECOMMENDATION REGARDING APPLICATION FOR DEFAULT JUDGMENT**<br><br>Regarding Docket No. 182, 201 |

Following the request for clarification submitted by Plaintiff Cadence Design Systems, Inc., the Court issues this Amended Report and Recommendation.

Plaintiff Cadence Design Systems, Inc. filed a renewed motion for default judgment against Defendant Pounce Consulting, S.A. DE C.V. (Dkt. 182.) Pursuant to Civ. L.R. 72-1, this motion was referred to the undersigned magistrate judge for a recommendation on Plaintiff's motion. (Dkt. 183.) Pursuant to Civil Local Rule 7-1(b), the Court finds that the motion is appropriate for decision without oral argument.

For the reasons stated below, the Court RECOMMENDS that the District Court GRANT and certify Plaintiff's request for default judgment pursuant to Federal Rule of Civil Procedure 54(b). The Court further RECOMMENDS that damages and injunctive relief be awarded as provided below.

## BACKGROUND

**A.     The Parties**

Cadence Design Systems, Inc. ("Cadence") is a Delaware corporation with its principal place of business in San Jose, California. (First Amended Complaint at Dkt. 26 ("FAC"), ¶¶ 2, 16.) Cadence provides electronic design automation software, engineering services, and semiconductor

intellectual property which "help engineers design transistors, standard cells, and IP blocks that make up systems on chips, as well as integrated circuits and printed circuit boards." (*Id.*, ¶ 16.) Cadence's relevant design platforms include Allegro®, OrCAD®, and PSpice® products. (*Id.*, ¶ 17.)[1]

Defaulting Defendant Pounce Consulting, S.A. DE C.V. ("Pounce SA") is a Mexican Sociedad Anónima de Capital Variable with its principal place of business in Mexico. (FAC, ¶ 4) Pounce SA "provides custom solutions in embedded design, electronics manufacturing, IT and staffing services." (*Id.*, ¶¶ 25, 38.) Pounce SA "offers services related to electronic design and requires certain engineers on its staff to be skilled in the use of Cadence's software and design suites." (*Id.*, ¶¶ 25, 40-43.)

Defendant Pounce Consulting, Inc. ("Pounce USA") is a California corporation with its principal place of business in San Diego, California. (*Id.*, ¶ 3.) While Cadence alleges that Pounce USA is an *alter ego* of Pounce SA, Pounce USA maintains that it is a small staffing agency that hires engineers and other professionals for projects in the United States. (*Id.*, ¶¶ 5-10; Answer at Dkt. 41, ¶ 11.) For purposes of this Court's report and recommendation, there is no consideration of Cadence's *alter ego* allegations.

**B.    Use of Cadence Programs**

When a customer purchases a license to use Cadence software or intellectual property, the customer receives an invoice indicating the type of license purchased and a "license file." (FAC, ¶ 27.) Cadence's software will not operate unless the user installs Cadence License Manager and accepts the terms and conditions presented in the Cadence Software Agreement. (*Id.*, ¶¶ 28, 29.) "Specifically, when installing the License Manager, a user is prompted to accept the terms of the Cadence Design Systems, Inc. Software and Maintenance Agreement" (the "Software License Agreement"). (*Id.*; Dkt. 54-7, ¶¶ 9, 10.) The Software License Agreement states:

---

[1] Cadence software programs such as Allegro, design, test, and design the physical layout ("floorplan") of circuit boards. (Alfaro Declaration at Dkt. 54-7, ¶5.) Cadence's PSpice software allows engineers to simulate and verify circuitry designs. (*Id.*, ¶ 7.) Cadence's OrCAD software allows the user to floorplan electronic components on a printed circuit board. (*Id.*, ¶ 8.) Once the design is finalized, the OrCAD software can export manufacturing data instructions in a variety of formats to fabricate the printed circuit board. (*Id.*)

> THE SOFTWARE LICENSE AND MAINTENANCE AGREEMENT ("AGREEMENT") IS A LEGAL DOCUMENT BETWEEN YOU AND CADENCE DESIGN SYSTEMS, INC. ("CADENCE"). PLEASE READ THIS AGREEMENT CAREFULLY BEFORE INSTALLING YOUR CADENCE SOFTWARE ("SOFTWARE"). BY USING THE SOFTWARE, YOU (EITHER AN INDIVIDUAL OR A BUSINESS ENTITY) AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT. IF YOU DO NOT WANT TO BE BOUND BY THE TERMS OF THIS AGREEMENT, CADENCE IS UNWILLING TO LICENSE THE SOFTWARE TO YOU, IN WHICH EVENT YOU MUST PROMPTLY RETURN THE SOFTWARE AND ALL ACCOMPANYING ITEMS (INCLUDING MANUALS, BINDERS OR OTHER CONTAINERS, AND ANY OTHER PRINTED MATERIALS) WITHIN 30 DAYS. BY CLICKING YES DURING THE INSTALLATION AND BY USING THE SOFTWARE . . . YOU ACKNOWLEDGE THAT YOU HAVE READ THE AGREEMENT AND ACCEPT ITS TERMS.

(*Id.,* ¶ 30, Ex. G.)

Installation of the License Manager requires a user to choose an option: "I accept the terms of the license agreement" to proceed. (*Id.,* ¶ 31; Dkt. 54-7, ¶ 14.) After the user installs the License Manager and the software, the user must again accept the terms of the Software License Agreement by selecting an option: "I accept." Otherwise, the user cannot proceed with the installation of the software. (*Id.,* ¶ 34; Dkt. 54-7, ¶ 15.)

To protect against unauthorized use of its software, Cadence put in place certain tracking measures to monitor illicit uses. (FAC, ¶ 35.) Data is transmitted to Cadence whenever the tracking measures detect unauthorized alteration or use of Cadence's products, e.g., when a user bypasses a technological measure by using counterfeit license files or when a user alters Cadence software by circumventing the license mechanism. (*Id.,* ¶ 36; Dkt. 54, ¶¶ 16-19, Ex. A.) Other measures verify that Cadence software is used according to an appropriate license. (*Id.,* ¶ 37.) Cadence's "phone home" technology reports specific information to Cadence about computers that use altered or unauthorized reproductions of Cadence software. (Dkt. 54, ¶¶ 16-19; Ex. A.) Users consent to the collection of information when they accept the terms and conditions of the Cadence Software License Agreement. (FAC, Ex. G, ¶ 3.)

C. **Pounce SA's Unauthorized Use of Software**

Pounce SA owns no legal copies of Cadence software. (FAC, ¶¶ 44, 69.) According to Cadence, Pounce SA accepted and agreed to be bound by the terms of the Software License

3

Agreement when it installed Cadence's software, including a commitment by Pounce SA to protect the software from unauthorized reproduction, publication, or distribution. (*Id.,* ¶¶ 30, 46, 48.) The terms of the Software License Agreement require parties who disagree with the use provisions to return the software. (*Id.,* ¶ 30.) In violation of the Software License Agreement, Pounce SA has repeatedly obtained, reproduced and used Cadence software without authorization. (*Id.,* ¶¶ 39, 40, 45, 56.)

According to Cadence's tracking mechanisms, Pounce SA used Cadence software without authorization thousands of times on at least twenty-five different machines identified as affiliated with Pounce SA. (*Id.,* ¶¶ 62-63.) The domains "corp.pounceconsulting.com" and "pounceconsulting.com" and email addresses "@corp.pounceconsulting.com" and "@pounceconsulting.com" are linked to machines using unauthorized reproductions of Cadence software. (*Id.,*¶¶ 64-66; Dkt. 54-7, ¶ 22.) There were also other uses that revealed computers with machine names, such as "pounce-pc," "pounce-59fdb41d," and machines with names of Pounce SA's employees, such as "vnavarro" (Victor Navarro) and "Nicolas-i7PC" (Nicolas Izquierdo). (FAC, ¶ 68; *see also* Dkt. 182-4 (Viera Deposition Transcript at 179:6-180:3; 181:12-182:15). In addition, Cadence detected IP addresses associated with Pounce SA. (FAC, ¶ 67.)

Cadence presented evidence confirming Pounce SA's use of Cadence's software to perform its contracts with third parties. (Ruttenberg Dec., Dkt. 182-2, ¶¶ 7, 9-11, 15, Exs. F, H-J, N (181-10, 181-12 through 181-14, 181-18).) The schematics produced by third parties contain aspects unique to Cadence's software. (Choudhary Dec., Dkt. 181-7, ¶¶ 15-39.)

On January 28, 2016, Cadence advised Roger Viera, the President and CEO of Pounce SA, that Pounce SA was using counterfeit ("cracked") and unauthorized versions of Cadence's software and that Cadence sought to resolve the matter without litigation. (*Id.,* ¶¶ 70-72.) Pounce SA ignored additional communications and refused to pay for any past software use. (*Id.,* ¶¶ 72, 73.)

**D.    Procedural History**

Cadence initially sued Pounce USA. (Dkt. 1.) However, Pounce USA responded that it was not the same entity as Pounce SA and that the entities happen to have similar names. (Dkt. 66-2.) Subsequently, Cadence filed the FAC, adding Pounce SA as a defendant and alleging that the two

1  Pounce entities are *alter egos*. (Dkt. FAC, ¶ 5.) On February 15, 2018, Cadence filed a motion for
2  default judgment against Pounce SA after Pounce SA failed to appear in the litigation. (Dkt. 55.)
3  The Hon. Phyllis Hamilton referred the case to the undersigned for report and recommendation.
4  (Dkt. 56.) Subsequently, counsel for Pounce SA filed a motion to quash service and to set aside the
5  default. (Dkts. 58, 59.) Judge Hamilton granted the motion to set aside default and denied the
6  motion to quash, finding service was adequate. (Dkt. 136.) The undersigned then issued an order
7  recommending that the motion for default judgment be dismissed. (Dkt. 144.) Judge Hamilton
8  adopted the recommendation. (Dkt. 152.) Judge Hamilton also granted the request of counsel for
9  Pounce SA, the law firm Procopio Cory Hargeaves and Savitch LLP, to withdraw from the litigation
10 given an "irreconcilable breakdown in the attorney-client relationship." (Dkt. 153.)

11 After the deadline for Pounce SA to retain substitute counsel passed without notification to
12 the Court of the retention of new counsel, Judge Hamilton issued an order to show cause as to why
13 Pounce SA's failure to retain counsel should not result in the entry of default against Pounce SA for
14 the second time. (Dkt. 160.) After the deadline passed without response, the Court entered default
15 against Pounce SA. (Dkt. 165.)

16 Subsequently, Cadence filed a renewed request for default judgement against Pounce SA,
17 which was again referred to this magistrate judge for recommendation. (Dkts. 181, 183.) Cadence
18 seeks a default judgment with respect to three claims alleged in its FAC: copyright infringement,
19 circumvention of copyright protections under the Digital Millennium Copyright Act ("DMCA"), and
20 breach of a software agreement. (Dkt. 182, p. 1.)

**ANALYSIS**

**A. Service and Jurisdiction**

    **1.  Service**

Judge Hamilton previously ruled that service of process on Pounce SA was adequate and found Pounce SA in default after it failed to retain counsel and continue its defense of the action. (Dkts. 136, 165.)

    **2.  Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over Cadence's action under 28 U.S.C. §§ 1331,

1338. Specifically, pursuant to 17 U.S.C. § 501, *et seq.* (copyright infringement) and 17 U.S.C. § 1201, *et seq.* (circumvention of copyright protection systems under the DMCA. The court has supplemental jurisdiction over Cadence's breach of contract claim. 28 U.S.C. § 1367(a).

Cadence is a Delaware corporation with its principal place of business in this district. Pounce S.A. is a resident of Mexico. (Dkt. 25, p. 3.) Given the diversity of the parties and that a sum greater than $75,000 is at issue, the Court has original jurisdiction in accordance with 28 U.S.C. § 1332.

### 3. Personal Jurisdiction

Before entering default judgment, a court must determine whether it has jurisdiction over defendants. *See In Re Tuli v. Rep. of Iraq,* 172 F.3d 707, 712 (9th Cir. 1999). In *Tuli,* the Ninth Circuit explained that, where a plaintiff seeks default judgment, the court may not assume the existence of personal jurisdiction, because a judgment in the absence of personal jurisdiction is void. *Tuli,* 172 F.3d 712. Where there are questions about the existence of personal jurisdiction in a default, the court should provide the plaintiff with the opportunity to establish the existence of personal jurisdiction. *Id.*

Generally, federal courts "follow state law in determining the bounds of their jurisdiction over persons." *Daimer AG v. Bauman,* 571 U.S. 117, 134 S.Ct. 746, 753 (2014). Personal jurisdiction is properly exercised over a defendant if it is permitted by a long-arm statute and if the exercise of jurisdiction does not violate due process. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). Because California's long-arm statute allows for the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, the analysis for personal jurisdiction is the same under both state and federal law. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800-01 (9th Cir. 2004); Cal. Code Civ. Pro. § 410.10.

A court may exercise jurisdiction over a nonresident defendant only when the defendant has "'minimum contacts' with the forum state such that jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger,* 374 F.3d at 801 (quoting *International Shoe v. Wash.,* 326 U.S. 310, 316 (1945)). This Court may assert specific personal jurisdiction over nonresident defendants if three requirements are met: (1) the defendant purposefully directed its activities at residents of the forum; (2) the plaintiff's claim arises out of or relates to those activities;

6

and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger,* 374 F.3d at 802. "So long as it creates a substantial connection with the forum, even a single act can support jurisdiction," but such act must not "create only an attenuated affiliation with the forum." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 n. 18 (1985). The plaintiff bears the burden of satisfying the first two prongs; once that is done, the burden shifts to the defendant. *Mavrix Photo, Inc. v. Brand Technologies, Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011).

### a. **Purposeful Direction**

To ascertain whether a defendant purposefully directed its activities at residents of the forum, the court must engage in a "qualitative evaluation of the defendant's conduct with the forum state." *Core-Vent Corp. v. Nobel Indus., AB,* 11 F.3d 1482, 1485 (9th Cir. 1993). The reason is that courts must ensure that a nonresident defendant is not summoned into court based on "random, fortuitous, or attenuated" contacts with the forum state. *Panavision International LP v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Even if Pounce SA were not physically in California, this Court may exercise jurisdiction over Pounce SA based on the "effects" doctrine, allowing jurisdiction "over a defendant whose only conduct with the forum state is the purposeful direction of a foreign act having effect in the forum state." *Core-Vent,* 11 F.3d at 1485. To meet the requirements of the effects doctrine, a plaintiff must satisfy the three part test established in *Calder v. Jones,* 465 U.S. 783 (1984): (i) the defendant must have committed an intentional act; (ii) the defendant's act was expressly aimed at the forum state; and (iii) the defendant knew the brunt of the harm was likely to be suffered in the forum state. *Id.* at 789-90. However, a defendant's "random, fortuitous, or attenuated contacts" will not suffice. *Walden v. Fiore,* 571 U.S. 277, 286 (2014) (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985). All three requirements are met here.

#### i. *Intentional Act of Defendant*

An intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.,* 704 F.3d 668, 674 (9th Cir. 2012). Here, Pounce SA committed intentional acts: it purposefully copied, downloaded, and used counterfeited and unauthorized versions of Cadence's software and tools or license files located in this District even though Pounce SA knew that Cadence would suffer harm in this District.

### ii. *Expressly Aimed at the Foreign State*

This prong requires inquiry as to whether the defendant expressly aimed its act at the forum state. However, something more is needed than a mere foreseeable effect. *Pebble Beach Co,* 453 F.3d at 1156. Express aiming exists where the defendant "is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002).

To meet this prong, it is sufficient for a plaintiff, filing suit in its home state against an out-of-state defendant, to allege that defendant intentionally infringed its intellectual property rights while the defendant knew that plaintiff is located in the forum state. *Amini Innovation Corp. v. JS Imps., Inc.,* 497 F.Supp.2d 1093, 1105-06 (C.D. Cal. 2007). In the context of copyright infringement, the Ninth Circuit has held that the "alleged willful infringement of [a plaintiff's] copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder" established "individualized targeting" of forum state. *Axiom Foods, Inc. v. Acerchem International, Inc.,* 874 F.3d 1064, 1069 (9th Cir. 2017) (quoting *Mavrix Photo,* 647 F.3d at 1228.)

Here, Cadence alleges that Pounce SA knowingly used the intellectual property of the California-based Plaintiff. Further, given that a large portion of the software industry is located in northern California, it was reasonable to assume that Defendant's activities were directed at California. *See, e.g. Autodesk, Inc v. Kobayashi + Zedda Architects Ltd.,* 191 F.Supp.3d 1007, 1016 (N.D. Cal. 2016). Therefore, the Court finds that Pounce SA engaged in conduct expressly aimed at California.

### iii. *Location of the Brunt of the Harm in the Forum State*

The third prong of the purposeful direction inquiry is whether defendant knew the brunt of the harm would be suffered in California. *Dole,* 303 F.3d at 1111. Only a "jurisdictionally sufficient amount of harm" must be suffered in the forum state; it does not matter if more harm occurs outside the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme,* 433 F.3d 1199, 1207 (9th Cir. 2006). Where a party brings a claim for infringement of intellectual property, "it is foreseeable that the loss will be inflicted…where the copyright holder has its principal place of business." *Wash. Shoe Co.*, 704 F.3d at 679. Therefore, it is assumed that Cadence experienced the financial losses, as well as

1  costs and legal expenses arising from Pounce SA's conduct, in California. Thus, Cadence suffered a jurisdictionally sufficient amount of harm in California.

### b. Arising from Forum-Related Activities

The second requirement for specific jurisdiction is that the claim "arises out of or relates to the defendant's forum-related activities." *Schwarzenegger,* 374 F.3d at 802. "This element is established if Cadence would not have been injured "but for" the nonresident defendant's forum-related activities. *Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Pounce SA's unauthorized use of Cadence's software caused Cadence injury in California, and this particular injury would not have occurred "but for" Pounce SA's alleged conduct. As such, it arises from Pounce SA's forum-related activities. Thus, the second element of the test for specific jurisdiction is met.

### c. Reasonableness

Because the first two requirements for establishing specific personal jurisdiction are have been established, the nonresident defendant must present a "compelling case" that asserting jurisdiction would be unreasonable. *Marvix Photo,* 647 F.3d at 1228. Defendant waived the opportunity to make this showing by failing to participate in this litigation. Nonetheless, the assertion of personal jurisdiction in this instance is not unreasonable given the fact that Pounce SA used Cadence's software and continued the unauthorized use of its software following notice by Cadence. As a result, Defendant had fair warning that he might be sued in California. *See Burger King,* 471 U.S. at 472.

**B. Standard Governing Default Judgment.**

Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment following entry of the party's default based upon a failure to plead or otherwise defend the action. A district court's decision to enter a default judgment involves some discretion. *Lau Ah Yew v. Dulles,* 236 F.2d 415, 416 (9th Cir. 1956) (affirming district court's denial of default judgment). In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for considerations:

> (1) The possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).

After default is entered, the well-pleaded allegations in the complaint regarding liability are deemed true, except as to damages. *Fair Housing of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002). The court is not required to make detailed findings of fact. *Id.* Moreover, default judgment cannot exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54 (c). Upon review of the well-pleaded allegations in this case, the Court finds that the *Eitel* factors weigh in favor of default judgment.

**1. Factors two and three of *Eitel* test (merits of substantive claim and sufficiency of complaint).**

In evaluating the merits of the substantive claim and the sufficiency of the Complaint, the Court examines the three claims asserted: copyright infringement, circumvention of copyright protection systems, and breach of contract.

**a.    Cadence adequately asserts claims for Copyright Infringement (17 U.S.C. § 501).**

Federal copyright law provides protection to authors of "original works of authorship, including software programs." *Vernor v. Autodesk, Inc.,* 621 F.3d 1102, 1106 (9th Cir. 2010) (citing 17 U.S.C. §§101-103). The Copyright Act confers exclusive rights on copyright owners, including the exclusive right of distribution by sale or rental. *Id.* at 1106-07 (citing 17 U.S.C. § 106(3)). Infringement occurs whenever someone "violates any of the exclusive rights of the copyright owner." *Id.* Licensing agreements allow for the exclusive distribution of a copyright holder's products subject to the restrictions in the license. "A licensee infringes the owner's copyright if its use exceeds the scope of the license." *Adobe Systems Inc. v. One Stop Micro, Inc.,* 84 F.Supp.2d 1086, 1092 (N.D. Cal. 2000) (citations omitted.) In situations where a defendant purportedly received a copy of the licensed software from a third party, the defendant is subject to the restrictions in the licensing agreement and therefore may become liable for copyright infringement. *Id.*

To recover for copyright infringement, a plaintiff must show: (1) ownership of a valid

copyright and (2) copying of constituent elements of the work that are original. *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361 (1991). Here, Cadence describes its ownership of various copyrights at issue, including U.S. Copyright Office Copy Registration Nos. TX 7-751-386 for Allegro 16.5, TX 8-323-840 for Allegro PCB 16.6, TX 8-320-014 for PSPICE 16.5, TX8-320-008 for PSPICE 16.6, TX 8-320-016 for OrCAD 16.5, and TX 8-320-041 for OrCAD 16.6. (FAC, ¶¶ 19-24, 76, 77.)

Cadence further alleges that Pounce SA copied, downloaded, modified, used, and installed Cadence's copyrighted software without authorization. (FAC, ¶¶ 39, 40, 45, 54, 56, 78).

The Court finds that there is adequate factual specificity to meet the second and third *Eitel* requirements considering the sufficiency of the complaint and the substantive merits of the claim of copyright infringement.

### b.   Circumvention of Copyright Protection Systems.

Cadence asserts a claim for circumvention of copyright protection systems or violation of the Digital Millennium Copyright Act ("DMCA"). The DMCA prohibits the circumvention of a technological measure that effectively controls access to work protected under this title. 17 U.S.C. § 1201(a)(1)(A). Section 1201(a)(2) provides:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that –
>
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

Section 1201(b)(1) prohibits the trafficking of devices primarily designed or produced for the purpose of circumventing "protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof." "Circumvent protection

11

afforded by a technological measure" means "avoiding, bypassing, removing, deactivating, or otherwise impairing a technological measure." *Id.* § 1201(b)(2)(A); *Sony Computer Entertainment America, Inc. v. Divineo, Inc.,* 457 F.Supp.2d 957, 964 (N.D. Cal. 2006).

As previously noted, Cadence installed security measures to protect its intellectual property: its software will not operate unless the Cadence License Manager is installed on the computer that will use Cadence's software or on the server accessible to each computer that will use the software. (FAC, ¶ 28.) Pounce SA circumvented these measures by using altered versions of Cadence License Manager. (*Id.,* ¶¶52-56, 58-61, 85.) Pounce SA also accessed additional product options beyond the typical version that are available only at an additional cost. (*Id.,* ¶¶ 58-61.) This circumvention was accomplished by obtaining, downloading, and copying unauthorized versions of Cadence's License Manager and its software. (*Id.,* ¶ 87; Alfaro Depo. at Dkt. 181-9.) Cadence has sufficiently met the second and third *Eitel* factors for violation of the DMCA.

### c. Breach of Contract (Software License Agreement)

To state a claim for breach of contract under California law, Cadence must establish: (1) that Cadence and Pounce SA entered into a contract, (2) that Cadence performed all or substantially all of the significant things that the contract required, (3) that Pounce SA breached the contract, and that (4) Cadence was harmed. *See* Judicial Counsel of California, *Civil Jury Instructions,* Vol. 1 (July 2018 ed.), No. 303.

Here, Cadence alleges that Pounce SA agreed to the terms of Cadence's Software License Agreement, that Cadence performed, that Pounce SA breached the Software License Agreement, and that Cadence suffered damages. Cadence's software will not operate until the user has twice agreed to the Software License Agreement. (FAC, ¶¶29-31, 34.) The user must select the option: "I accept," and in so doing, agrees to the terms of the Software License Agreement. (*Id.*)

Given the foregoing, it is reasonable to assume that Pounce SA agreed to the terms of the Software License Agreement by installing Cadence's software, because without doing so, Pounce SA would not have been able to access to the software. *See AWR Corp. v. ZTE, Corp.,* No. 10-5790-PA, 2011 WL 13217534, *3 (C.D. Cal. June 13, 2011); (citing *BMM SOFT, Inc. v. White Oaks Tech., Inc.,* No. 9-4562-MMC, 2010 WL 3340555, *1 (N.D. Cal. Aug. 25, 201) (the allegation that the

1  software could not run unless the user clicks "I agree" combined with the allegation that software
2  was in use by the defendant created a reasonable inference that the defendant clicked "I agree").
3  Given the mutual assent between the parties found in the terms of the Software License Agreement,
4  the Court finds the existence of a contract between Cadence and Pounce SA.

Cadence's security measures tracked the use of Cadence's software to Pounce SA. (FAC ¶¶ 62-68.) Cadence alleges that Pounce SA breached the Software License Agreement by "(i) reproducing, sharing and using Cadence's software without authorization, (ii) bypassing the license file entry and not using valid license files, (iii) taking actions to circumvent the entry of license file information, (iv) continuing to use Cadence's software for commercial purposes without a valid license, (v) installing Cadence's software without authorization, (vi) not paying any license fee, (vii) allowing Cadence's software to be used or copied by unlicensed persons and (viii) failing to take reasonable steps and exercise due diligence to protect Cadence's software from unauthorized reproduction, publication or distribution." (FAC, ¶¶ 57, 92.)

Finally, Cadence establishes that it was damaged by the Pounce SA's breach at a minimum for the unpaid value of the license fees. (*Id.*, ¶ 93.) Cadence further alleges that it is entitled to its attorneys' fees and costs under Section 28 of the License Agreement. (FAC, ¶ 94.)

The Court finds that Cadence has met the second and third *Eitel* factors with regard to the breach of contract claim.

**2.   Remaining *Eitel* Factors.**

All of the remaining *Eitel* factors support the decision to grant default judgment:

**Prejudice to Plaintiffs.** If the Court denies Cadence's motion, Cadence will be unable to enforce the its intellectual property rights and may continue to suffer harm from Pounce SA.

**Dispute concerning a material fact.** There is no information regarding a dispute of material facts. The Court was careful to ensure that there is sufficient evidence establishing that Pounce SA infringed upon Cadence's copyrighted software, circumvented the protections that Cadence put in place to control access to its intellectual property, and violated the terms of the software license agreement before calculating damages and granting injunctive relief. This issue and the related calculation of damages pose no material issue of fact that precludes granting Cadence's motion.

**Excusable neglect.** There is no indication that Pounce SA's failure to defend this litigation or participate in the present proceeding is the result of excusable neglect. Pounce SA previously appeared in the litigation and yet refused to continue with new counsel. Thus, Pounce SA's failure to defend the litigation appears intentional rather than the product of neglect.

**Sum of money at stake.** A court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct. *Pepsico, Inc v. California Security Cans,* 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *Eitel,* 782 F.2d at 1472 (three million dollar judgment supported decision not to enter default judgment).

Cadence seeks actual damages (license fees plus interest), disgorgement of profits and statutory fees in the total sum of $22,087,550. As discussed below, the $17,332,500 in statutory damages sought by Cadence is higher than this Court finds reasonable and thus the Court recommends an award of statutory damages in the sum of $2,079,900. Thus, the Court recommends a total award of $6,834,950.

The amount of money at issue is significant. However, Pounce SA's conduct was serious and egregious. There were a significant number of infringing incidents – at least 6,933. (Phan Dec. at Dkt. 55-3, ¶ 7.) Further, Pounce SA's infringing conduct was intentional. Pounce SA also refused to participate in or cooperate with the current litigation. Although the sum at stake is a significant sum, the circumstances warrant such an award.

**Strong policy favoring decisions on the merits.** Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b); *see Bd. of Trustees v. RBS Washington, LLC,* 2010 WL 1450897 at *4 (N.D. Cal. Jan. 8, 2010.) Here, Pounce SA refused to litigate, and Cadence had no option other than to pursue a default judgment.

In light of the foregoing, it is RECOMMENDED that default judgment be entered against Pounce SA. Further, having considered the Pounce SA's awareness and prior involvement in the current litigation, the Court sees no just reason to delay the entry of judgment and further RECOMMENDS that judgment be entered pursuant to Rule 54(b).

14

**REMEDIES**

To recover damages after securing a default judgment, the plaintiff must prove entitlement to relief by testimony or written affidavit. *PepsiCo., Inc.,* 238 F.Supp.2d at 1175 (citing *TeleVideo Systems, Inc.,* 826 F.2d at 917-18.) Here, Cadence seeks $783,310 in lost licensing revenue plus $998,675 in interest under the claim for breach of contract. Cadence seeks disgorgement of Pounce SA's profits ($2,973,065.73) for copyright infringement, as permitted by 17 U.S.C. § 504(b). For the DMCA claim, Cadence requests statutory damages of $17,332,500 in accordance with 17 U.S.C. § 1203(c)(3)(A). Finally, Cadence seeks injunctive relief pursuant to 17 U.S.C. § 502.

**A.   Breach of Contract – Actual Damages**

Cadence seeks its actual damages, or license fees, for the unauthorized use by Pounce SA. Cadence's tracking measures detected 6,933 unauthorized uses of Cadence Allegro, OrCad, and PSpice software by Pounce SA on twenty-six different computers. (Phan Dec. at Dkt. 55-3, ¶ 7.) Cadence maintains that these are only a fraction of the actual uses because offline use of Cadence's software may not be detected. (Dkt. 54-7, ¶ 25.) Nevertheless, Cadence uses the 6,933 uses as the basis for calculating its damages.

Based on the number of offending machines, the programs used, and the number of detected unauthorized uses, Pounce SA would need 31 annual licenses for Allegro, 34 annual licenses for OrCad, 15 annual licenses for PSpice, and 36 annual licenses for product options not available in the base license prices. (Dkt. 55-3, ¶ 8.) The cost of these licenses is $783,310. (Dkt. 55-3, ¶ 10.)

Further, under the Software Licensing Agreement, Cadence is entitled to interest at the monthly rate of 1.5%. (FAC, Ex. G, ¶ 5.) As of November 14, 2018, Pounce SA owed Cadence $998,675 in prejudgment interest. (Dkt. 181-8, ¶ 75-80.) The Court finds that a damages award including both the cost of the licenses and the prejudgment interest rate of 1.5% per month, accruing through the entry of final judgment, is reasonable.

**B.   Copyright Violations – Disgorgement of Profits**

According to 17 U.S.C. § 504(b), a plaintiff may recover "profits of the infringer that are attributable to the infringement," in addition to actual damages. Cadence already seeks actual damages for its breach of contract claim, as described above. "In establishing the infringer's profits,

the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.*

Because Pounce SA refused to provide discovery as to its customers or profits from the use of Cadence's software during the litigation, Cadence subpoenaed three Pounce SA customers: Tablesafe (formerly known as Viableware), MyGnar, and Capstone Turbine. (Dkt. 182, p. 19.) Review of the schematics produced by these three customers indicates that Cadence's software was used in the schematics' designed by Pounce SA. (Choudhary Dec. at Dkt. 181-7, ¶¶ 15-39.)

Cadence retained Sidney Blum, who is a certified public accountant, a royalty auditor, an internal auditor, and an expert in damages. (Blum Dec. 182-9, ¶ 5; Report, Dkt. 181-8, Ex. 1, ¶¶ 90-117.) Blum calculated that Pounce SA derived a total revenue of $2,973,065 from the use of Cadence's software in providing services to all three customers. (*Id*.)

Blum's opinion that Pounce SA received revenues of $2,078,314 from Tablesafe was based on the deposition of Tablesafe's Rule 30(b)(6) designee, Christopher Conley; a settlement agreement between Pounce SA and Tablesafe; and Tablesafe's documentation of the payments made to Pounce Consulting, United Capital Funding Corp., and Hernandez Marym, S.C. at the instruction of Pounce SA.[2] (Dkt. 181-8, ¶¶ 90-99.) Conley testified that Pounce SA created the schematics purchased by Tablesafe using Cadence's Allegro software. (Dkt. 181-10 at 44:19-23, 102:18-22, 137:1-4.)

The basis of Blum's opinion that Pounce SA received $799,488 from Capstone Turbine include a scheduling agreement created by Capstone Turbine, Capstone Turbine's accounts payable ledger, and copies of checks and invoices involving Pounce Consulting Inc. or United Capital Funding Corp. (Dkt. 181-8., ¶¶ 100-106.)

In Blum's opinion, Pounce SA received $95,263 in gross revenue from MyGar. (Dkt. 181-8, ¶ 116.) Of this sum, $25,263 from MyGnar is based on payments for Master Design Services Agreement, a wire transfer made on April 1, 2015 in response to an invoice dated March 31, 2015 for

---

[2] The Court has made no determination of the relationship between Pounce SA and Pounce USA, but the Court notes that the documentation provided by Tablesafe links Pounce Consulting, Inc. of Irvine, California with the Pounce SA delivery center and manufacturing site in Guadalajara, Mexico. *See e.g.,* 181-11 at TS000452; 181-13 at TS000423.

work on the "Gnarbox." (Dkt. 181-8, ¶¶ 107-116.) MyGnar stock worth approximately $70,000 was also issued to Pounce Capital, Inc. (Dkt. 181-8, ¶¶ 112, 113.) The custodian of records at MyGnar authenticated the documents produced by MyGnar. (Dkt. 181-24.)

Because Pounce SA did not oppose the motion for default judgment, there is no evidence that would reduce the gross revenue to a sum more representative of the actual profits received. However, since the disgorgement of profits is based solely on three of Pounce SA's customers and Pounce SA has an annual revenue of roughly $70 million (Veira Dep at Dkt. 182-4, 193:4-15), the Court finds that the evidence supports the profits Blum calculated. Therefore, the Court RECOMMENDS an award of $2,973,065 for Cadence's copyright infringement claim.

**C.     DMCA Statutory Damages**

Statutory damages for circumvention of the DMCA is $200 to $2,500 per act of circumvention. 17 U.S.C. § 1203(c)(3)(A). Cadence argues that its tracking measures have detected 6,933 unauthorized uses of Cadence Allegro, OrCad, and PSpice software by Pounce SA on twenty-six different computers. (Phan Dec. at Dkt. 55-3, ¶ 7.) Cadence argues that the maximum statutory sum is reasonable given Pounce SA's intentional conduct in refusing to pay license fees, its refusal to cooperate with the court and the parties in the litigation, claiming that Pounce SA's CEO has directed litigation involving Pounce SA and Pounce USA, for the unfair competition Pounce SA received over its competitors who paid licensing fees, and to discourage future wrongful conduct. Thus, Cadence requests $2,500 per act of circumvention given the willfulness of Pounce SA's conduct for a total of $17,332,500.

Although Pounce SA's conduct was willful, an award of the maximum sum of statutory damages would be a windfall to Cadence, which is already entitled to its actual damages, disgorgement of profits, and injunctive relief. The Court finds that an award of $300 per unauthorized use is a reasonable sum and therefore RECOMMENDS that Cadence be awarded a total of $2,079,900 in statutory damages for circumvention of the DMCA.

**D.     Injunctive Relief**

Cadence seeks a permanent injunction enjoining Pounce SA's unlawful conduct pursuant to 17 U.S.C. §§ 502, 1203(b)(1). Section 502(a) provides "[a]ny court having jurisdiction…to grant

temporary or final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Section 1203(b)(1) of the DMCA authorizes a court to "grant . . . permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation."

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has already suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006).

The Court finds that under the facts of this case, Cadence is entitled to a permanent injunction. Pounce SA has repeatedly used unauthorized versions of Cadence's software in designing its own schematics for Pounce SA customers, by passing Cadence's protections and profiting at Cadence's expense. Given Pounce SA's knowledge of its violations and continued use of Cadence's software, there is no adequate remedy at law to address the ongoing damage and irreparable harm. Further, the balance of hardships weighs in favor of Cadence, since an injunction will merely prohibit Pounce SA from ongoing unlawful activity. Finally, the public interest is served when copyright protections are enforced. Therefore, the Court recommends the injunctive relief described below.

## CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that the District Court GRANT Cadence's Motion and RECOMMENDS the following relief:

(1) entry of Default Judgment in favor of Cadence pursuant to Federal Rule of Civil Procedure 54(b);

(2) an award for actual damages for Cadence's breach of contract claim in the sum of $783,310 in lost licensing revenue plus prejudgment interest accrued at the rate of 1.5% per month through the date of final judgment;

(3) an award of disgorgement of Pounce SA's profits in the sum of $2,973,065.73 for copyright infringement, as permitted by 17 U.S.C. § 504(b);

(4) statutory damages of $2,079,900 or $300 for each of the 6,933 infringing incidents in accordance with 17 U.S.C. § 1203(c)(3)(A);

(5) an order that Pounce SA and its agents, employees, affiliates, distributors, successors,

assigns, and any other person or entity acting in concert or participation with Pounce SA be now and forever enjoined from using or downloading, or otherwise accessing the Cadence's Software or any other Cadence's software, including without limitation any and all version of Allegro, PSpice, and OrCad; and

(6) an order that Cadence be awarded its attorneys' fees and costs against Pounce SA based on section 28 of the Software License Agreement.

A party may serve and file specific written objections to this recommendation within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b); Civil L.R. 72-3.

**IT IS SO ORDERED**.

Dated: January 23, 2019


_____
SALLIE KIM
United States Magistrate Judge