UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., <br> Plaintiff, <br> v. <br> POUNCE CONSULTING, INC., et al., <br> Defendants. | Case No. 17-cv-04732-PJH <br><br> **ORDER** <br> Re: Dkt. 229 |

Plaintiff Cadence Design Systems, Inc.'s ("Cadence") motion to amend judgment to add Roger Viera as a judgment debtor came on for hearing before this court on July 17, 2019. Plaintiff appeared through its counsel, Guy Ruttenberg and Michael Eshaghian. Both defendants, Pounce Consulting, Inc. ("Pounce USA") and Pounce Consulting, S.A. de C.V. ("Pounce Mexico" or "Pounce SA," collectively "Pounce"), are in default and did not appear. Roger Viera appeared through his counsel, Tammy Lund. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

As with its previous order, the court declines to recite this action's tortured procedural history. The court finds it sufficient to note that after nearly two years of on-and-off again participation, the court entered both defendants' default for failing to retain substitute counsel. On April 22, 2019, the court adopted Magistrate Judge Sallie Kim's recommendations that this court grant default judgment against both defendants and find that Pounce USA is an alter ego of Pounce Mexico. See Dkts. 205, 218, 219. Three days later, the court entered final judgment, awarding plaintiff $6,983,178.29 for

defendants' breach of contract, copyright infringement, and circumvention of copyright protections. Dkt. 221 at 2-3. A subsequent order awarded plaintiff about $2.1 million in attorneys' fees and costs. Dkt. 242.

The Pounce defendants have not voluntarily paid any of those amounts, which has forced plaintiff to engage in post-judgment litigation to secure payment. Presumably as part of that attempt, on May 29, 2019, plaintiff filed the present motion to amend the judgment to add Viera as a judgment debtor pursuant to Federal Rule of Civil Procedure 69(a) and California Code of Civil Procedure § 187. That motion argues that Viera was not only the named CEO of Pounce Mexico and the named CFO of Pounce USA at times relevant to this litigation, but in fact was the alter ego of both companies and controlled the Pounce entities' conduct in this litigation. On June 26, 2019, Viera filed an opposition and plaintiff subsequently filed a timely reply.

**DISCUSSION**

**A.    Legal Standard**

Rule 69(a) provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." The Ninth Circuit has interpreted Rule 69(a) as "empower[ing] federal courts to rely on state law to add judgment-debtors[.]" In re Levander, 180 F.3d 1114, 1120–21 (9th Cir. 1999).

Here, the applicable state law is § 187 of the California Code of Civil Procedure. "Under section 187, the court has the authority to amend a judgment to add additional judgment debtors." See NEC Elecs. v. Hurt, 208 Cal. App. 3d 772, 778 (1989) ("NEC"). "This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." Id. The doctrine "does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in

2

enforcing a judgment or collecting a debt does not satisfy this standard." Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 539 (2000); Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 677 (9th Cir. 2017) (same).

"A § 187 amendment requires (1) that the new party be the alter ego of the old party and (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1148 (9th Cir. 2004) (internal quotation marks omitted; emphasis in original) (henceforth, "Katzir"); Toho–Towa Co., Ltd. v. Morgan Creek Prods., Inc., 217 Cal. App. 4th 1096, 1106 (2013) (same); NEC, 208 Cal. App. 3d at 778-79 (same). The judgment creditor bears the burden of satisfying both requirements by a preponderance of the evidence. Wollersheim v. Church of Scientology, 69 Cal. App. 4th 1012, 1018 (1999); Reno-Tahoe Specialty, Inc. v. Mungchi, Inc., No. CV 16-00663-GHK, 2018 WL 6267823, at *3 (C.D. Cal. Sept. 19, 2018).

**B. Analysis**

**1. Whether Due Process Prohibits a § 187 Amendment of a Default Judgment.**

Viera first argues that § 187's amendment procedure does not apply to default judgments. That argument, if correct, would short circuit plaintiff's present motion. Nor is it a position that lacks support. Indeed, a leading authority on California civil procedure states that "because of due process concerns, a default judgment is not subject to . . . amendment" pursuant to § 187. Rutter Group, Amending Judgment to Add Nonparty Alter Egos as Judgment Debtors, Cal. Prac. Guide Enf. J. & Debt Ch. 6G-15 (2019) (the "Rutter Guide"); see also Lloyd v. Martinez, No. E057370, 2014 WL 5162226, at *3 (Cal. Ct. App. Oct. 15, 2014) (unpublished) (" 'When a judgment is by default, the defendant did not have an opportunity to present a defense and amending the judgment would violate due process.' " (quoting 3 Cal. Trial Practice: Civil Procedure During Trial (Cont. Ed. Bar 3d ed. 2014) Judgments, § 23.31 at 23–30.)). In support, the Rutter Guide cites what appear to be the three seminal California cases on the topic: Motores De Mexicali,

3

S. A. v. Superior Court In & For Los Angeles Cty., 51 Cal. 2d 172, 173 (1958); NEC, 208 Cal. App. 3d at 775–781; and Wolf Metals Inc. v. Rand Pac. Sales, Inc., 4 Cal. App. 5th 698 (2016).

This court, however, concludes that those cases do "not stand for the broad proposition that piercing the corporate veil to enforce a default judgment is a per se violation of due process." Ermis Mgmt. Co. Ltd. v. United California Disc. Corp., 2008 WL 11450869, at *4 (D. Nev. Jan. 2, 2008) (reaching the same conclusion with respect to Ninth Circuit precedent). And, as explained below, the Ninth Circuit appears to agree.

In Motores, the California Supreme Court first recognized the due process concerns implicated by § 187. There, after suing a corporation and obtaining a default judgment, plaintiff sought to add three individuals as judgment debtors on an alter ego theory. Motores, 51 Cal. 2d at 173. The California Supreme Court held that adding the alleged debtors to a default judgment would violate their due process rights. Id. at 176. In reaching that conclusion, Motores distinguished two prior California appellate court opinions, by explaining that, unlike in those cases, the proposed judgment debtors in Motores "in no way participated in the defense of the basic action[.]" Id. at 175. The proposed judgment debtors "did not have attorneys subsidized by them appearing and defending the action against the corporation [ ] alleged to be their alter ego. Instead, the judgment was entered against [the corporation] strictly by default." Id. at 175-76. Motores explained that due process "guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses." Id.. "To summarily add" the proposed debtors "to the judgment . . . without allowing them to litigate any questions beyond their relation to the allegedly alter ego corporation would patently violate this constitutional safeguard." Id. at 176. Nor were the proposed judgment debtors under any "duty to appear and defend personally in that action, since no claim had been made against them personally." Id.[1]

---

[1] The California Supreme Court reached that conclusion without engaging with plaintiff's allegation that the proposed judgment debtors "knew that their financial manipulations

4

Thirty years later, in NEC, a California appellate court applied Motores to a situation where the corporate defendant failed to present a defense at trial. NEC, 208 Cal. App. 3d at 775-81. After appearing and filing a general denial—and without any other proceedings being conducted—the day before trial, the corporate defendant's CEO and sole shareholder notified the plaintiff that the corporation would not appear, apparently in light of a potential bankruptcy. Id. at 775, 781. The court subsequently entered judgment after holding a one-day trial, for which defendant did not appear. Id. at 775–76. Thereafter, the court granted the plaintiff's § 187 motion to add the corporation's CEO to the judgment. Id. at 776.

Relying on Motores, the California Court of Appeals reversed. NEC explained that because the corporation "did not make any attempt to defend the NEC lawsuit . . . [the CEO's] interests were [not] represented in the underlying action." Id. at 780. NEC, however, did not stop there. Rather, NEC next turned to whether the corporate defendant's interests aligned with the proposed judgment debtor's interest. Id. at 780. The NEC court answered that question in the negative. Though the corporate defendant believed it had a defense, it let the matter proceed uncontested because it planned to file a Chapter 11 bankruptcy petition and thus had no incentive to defend against the lawsuit. Id. In contrast, and unlike the usual situation where alter ego interests align, the CEO "was not named as a party, had no risk of personal liability and therefore was not required to intervene." Id. at 780–81. Because the interests of the corporation and the CEO were different, the appellate court could not "say that [the CEO] had occasion to conduct the litigation with a diligence corresponding to the risk of personal liability that was involved or that [the CEO] was virtually represented in the lawsuit." Id. at 781. Like Motores, NEC completed its analysis by considering whether there was sufficient "evidence to show that [the CEO] controlled the defense of the litigation." Id. at 781. The

---

would ultimately lead the [the corporate judgment debtor] into bankruptcy." Motores, 51 Cal. 2d at 174.

court held that that factor too was not met because "[t]here was no defense for [the proposed judgment debtor] to control," as other than a "general denial, no further proceedings were conducted." Id. (control contemplates "some active defense of the underlying claim").

Admittedly, Wolf Metals, the final case cited by the Rutter Guide, gets closest to stating a per se rule against amending default judgments. In Wolf Metal, after initially appearing and answering the complaint, the corporate defendant abandoned the litigation, which prompted the trial court to strike the corporation's answer and enter default judgment. Wolf Metals, 4 Cal. App. 5th at 701-02. Subsequently, the trial court granted plaintiff's § 187 motion to amend judgment to add the corporation's president. Id. 702. Reviewing the holdings in NEC and Motores, the Wolf Metals appellate court reversed. The court held that the action was factually indistinguishable from Motores: "Like the defendant corporation in Motores, [the corporate defendant] offered no evidence-based defense in the underlying action, and the judgment against [the corporation] was entered by default." Id.

But neither Motores nor NEC stand for the conclusion that § 187 does not apply to judgments entered after a defendant fails to present an "evidence-based defense." Rather, Motores and NEC require courts to consider whether the proposed judgment debtor's interest aligned with the named debtor's interest, and whether the type of and degree of control the proposed judgment debtor exerted over the named debtor ameliorates any due process concerns. Critically, that analysis does not require active litigation or an "evidence-based defense." Instead, what matters is whether the proposed judgment debtor had "the opportunity to be heard and to present his defenses." Motores, 51 Cal. 2d at 176 (emphasis added). Requiring that defenses actually be presented "would create a perverse incentive for potential alter ego defendants to incur default judgments when their corporations are sued, because default judgments would make them immune from personal liability." Ermis, 2008 WL 11450869, at *4 (rejecting conclusion that there is a per se rule against § 187 amendments to default judgments).

1 And requiring that the corporate defendant actually present defenses related to its
2 officers' personal liability—the natural extension of the argument—would aggravate those
3 perverse incentives.

4 Moreover, the Ninth Circuit has implicitly recognized that the normal § 187
5 analysis applies to attempts to amend a default judgment. In Katzir, the Ninth Circuit
6 reversed a district court's order adding the owner, "sole director, president, treasurer, and
7 secretary of the corporation" to a default judgment under Cal. Civ. Code § 187. Katzir,
8 394 F.3d at 1148-50. Reviewing Motores and NEC, Katzir concluded that NEC
9 "represents the law that the California Supreme Court would apply if faced with th[e]
10 issue of" whether the proposed judgment debtor exercised sufficient control. Katzir, 394
11 F.3d at 1150. Katzir, however, did not go on to interpret NEC as prohibiting § 187
12 amendments of default judgments. To the contrary, the Ninth Circuit applied the
13 standard § 187 two-part analysis and held that the trial court had failed to make factual
14 findings to support either the alter ego finding or the finding of control.

15 As to the "control" prong, which embodies the due process concerns first set forth
16 in Motores, see Katzir, 394 F.3d at 1149, in lieu of applying a per se rule, the Ninth Circuit
17 explained that "Section 187 'is an equitable procedure . . . [that] 'bind[s] new individual
18 defendants where it can be demonstrated that in their capacity as alter ego of the
19 corporation they in fact had control of the previous litigation, and thus were virtually
20 represented in the lawsuit." Id. at 1149 (quoting NEC; alterations in original; some
21 internal quotations omitted). "A prior judgment against a corporation . . . 'can be made
22 individually binding on a person associated with the corporation only if the individual to be
23 charged . . . [1] had control of the litigation and [2] occasion to conduct it with a diligence
24 corresponding to the risk of personal liability that was involved.'" Id. at 1150 (emphasis
25 added) (quoting NEC). As the Katzir trial court failed to analyze that question as it
26 applied to the owner of the defaulted corporation, the Ninth Circuit reversed.[2] Further,

---

[2] The Ninth Circuit also found insufficient plaintiff's evidence that the owner had hired the corporation's attorneys, appeared at settlement conferences, financed the litigation, and

7

the Ninth Circuit noted that, as in NEC, the owner "was not named individually, knew [the corporation] was on the verge of dissolution through Canadian bankruptcy law, and had no personal duty to defend the underlying lawsuit." Katzir, 394 F.3d at 1150. That is, like the NEC court, the interests of the owner and his corporation were not aligned, such that the owner was not virtually represented in the underlying suit. In short, beyond how it factored into the control analysis, it was of no matter to the Ninth Circuit that the judgment was entered pursuant to default.

True, at first blush, one might conclude that that is a distinction without a difference because the control requirement articulated by Motores, NEC, and Kazmir could never be satisfied vis-à-vis a default judgment. For, how could a proposed judgment debtor's interest be effectively represented by a named defendant that failed to present any defense at all? Relatedly, if an alter ego faces personal liability, is it consistent for him to control the litigation "with a diligence corresponding to the risk of personal liability" by allowing the named defendant to default?

While those considerations factor into a § 187 analysis, they do not show that the analysis is a foregone conclusion when applied to a default judgment.[3] That is because, as noted above, Motores, NEC, and Kazmir stand for a narrower proposition: The proposed judgment debtor must have had the "opportunity to be heard and present defenses[,]" Motores, 51 Cal. 2d at 176 (emphasis added), and the "occasion to conduct" the litigation "with a diligence corresponding to the risk of personal liability," Katzir, 394 F.3d at 1149 (emphasis added); NEC, 208 Cal. App. 3d at 781. "The real issue is not whether [the proposed judgment debtors] (or, technically, [the named defendant]) actually litigated the issue of [the named defendant's] liability, but rather whether [the proposed judgment debtors] had an opportunity to present a defense." Dow Jones Co. v. Avenel,

---

discharged the attorneys. Katzir, 394 F.3d at 1150.

[3] Indeed, numerous post-NEC, Katzir, and Motores cases have amended default judgments. See, e.g., Mad Dogg Athletics, Inc. v. NYC Holding, 565 F. Supp. 2d 1127, 1130 (C.D. Cal. 2008); Oceans II, Inc. v. Skinnervision, Inc., No. 212CV06867CASEX, 2015 WL 4484208, at *5 (C.D. Cal. July 20, 2015).

8

151 Cal. App. 3d 144, 150 (1984) (emphasis added) (proposed judgment debtors were given opportunity to litigate summary judgment through alter ego corporate defendant). And that is all due process requires. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks and citation omitted)); Shanghai Minguang Int'l Grp. Co. v. Yang, No. E044331, 2008 WL 4004697, at *4 (Cal. Ct. App. Aug. 29, 2008) (unpublished) (default judgment amended where proposed judgment debtor had "the opportunity to present his own defense and controlled the corporations' defense but chose not to do so[.]").

Accordingly, like the Ninth Circuit in Katzir, this court applies § 187's standard two-prong analysis to plaintiff's request to amend the default judgment to add Viera. In undertaking that analysis, the court is cognizant of the serious due process concerns implicated by applying that analysis to a default judgment, as plaintiff requests the court do here.

**2. Section 187 Analysis**

As discussed above, a § 187 amendment requires plaintiff prove by a preponderance of the evidence "(1) that the new party [is] the alter ego of the old party and (2) that the new party [ ] controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." Katzir, 394 F.3d at 1148. Plaintiff no doubt has a strong argument regarding the alter ego prong of that analysis.[4] The court, however, finds no cause to reach that issue because plaintiff has failed to show that Viera "controlled" the litigation in a manner that satisfies due process. As explained above, under Katzir and NEC, due process requires that Viera (1) controlled the litigation and (2) had occasion to conduct that control with a diligence corresponding to the risk of personal

---

[4] See, e.g., Dkt. 218 at 10 (adopted report and recommendation stating "Cadence has adduced ample evidence that Viera treats Pounce USA as a personal piggy bank"); Dkt. 215-6 (email from Viera instructing counsel to make Pounce USA the contracting party "[b]ecause [it] is the one that has no ASSETS!!!").

9

liability that was involved. Those issues require consideration of, inter alia, whether Viera was "virtually represented in the lawsuit" and whether his interest in the litigation aligned with the judgment debtors' interests.

Here, plaintiff has shown that Viera exercised some control over the litigation. Plaintiff has uncovered evidence that shows Viera controlled Pounce's pre-litigation response to Cadence's accusation of copyright infringement. Dkt. 102-7 at CAD_0000018, 21–22; Dkt. 229-8 (pre-litigation emails between Viera and Cadence); Ruttenberg Decl., Ex. F (Viera directing lawyer to "handle" plaintiff's continued pre-litigation communications); Dkt. 181-23 (Viera directing counsel to stop responding to Cadence's prelitigation communication). Further, the evidence shows that Viera controlled Pounce's litigation strategy in the immediate aftermath of plaintiff filing this suit. Dkt. 172-4 (Viera directing Pounce USA's counsel to respond that plaintiff had sued the wrong entity because Pounce SA and Pounce USA were independent entities that have no relationship); Dkt. 15 ¶¶ 4-7 (Pounce USA's Answer largely following Viera's instruction);[5] Dkt. 172-5 (pre-Answer email from Viera directing counsel to file for an extension).

That said, beyond Pounce's early litigation strategy, the evidence of Viera's control becomes murkier. True, plaintiff has submitted the declaration of Pounce USA's former CEO, Juan Llera, who testified that he reported to Viera and was expected to comply with Viera's instructions and that Viera "dictate[d] case strategy." Llera Decl. ¶¶ 7, 53-54. Llera's testimony also provides support for plaintiff's argument that Viera caused Pounce USA to default by refusing to allow Pounce USA to produce his emails, in contravention of this court's discovery order. Id. ¶ 55 (Llera asked Viera to produce emails but Viera refused); see also id. ¶ 56 (Llera testifying that "[i]It was not [his] decision to stop Pounce USA from participating in the Cadence litigation."); Dkt. 189 (order requiring Pounce USA

---

[5] Subsequent discovery has proven those representations misleading if not outright false. Indeed, the court has already found that Pounce USA is an alter ego of Pounce SA. See Dkt. 218 at 8-11; Dkt. 219.

to produce Viera's emails).

Viera, however, tells a different story. Viera testifies that while he "was involved in some of the decisions regarding how to proceed with the case, [ ] [he] was also following direction of the Board of Directors of Pounce SA." Viera Decl. ¶ 39. According to Viera, he could not ignore that direction because Pounce SA was paying Pounce USA's litigation costs. Id. Relatedly, Viera testifies that Pounce USA stopped participating in this litigation not because Viera refused to produce discovery, as Llera implies, but rather because Pounce SA's Board refused to continue funding Pounce USA's litigation. Id. Pounce USA's Board of Directors, according to Viera, reached the similar conclusion that "irrespective of the merits of Cadence's position . . . Pounce USA simply did not have the funds to continue paying the costs of defense[.]" Id. ¶ 33. As to Pounce SA, Viera testifies that the company is currently undergoing "debt restructuring," and, "at the insistence of Pounce SA's banks and lenders," Pounce SA's Board has "refused to provide any further funds for litigation." Id. ¶¶ 33, 39.

In sum, the court finds that there is largely undisputed evidence that Viera controlled Pounce's litigation strategy <u>early on</u> in this litigation. But that evidence does not translate into evidence that Viera controlled the entire litigation. On that issue, the evidence largely amounts to a battle of contradicting declarations. That contradictory evidence extends to certain critical issues, like whether Viera strategically controlled Pounce's decision to default—a decision that could show Viera exercised control with his personal interests in mind and not those of the corporation. With only that contradictory evidence before it, the court finds plaintiff has not carried its burden to show by a preponderance of the evidence that Viera controlled the litigation.[6] See Reno-Tahoe

---

[6] Plaintiff emphasizes that the timing of Pounce USA's default is suspicious because it occurred after the court ordered Pounce USA to produce Viera's documents. See Dkt. 189 (November 8, 2018 order requiring production of documents); Dkt. 193 (December 11, 2018 request to withdraw as attorney for Pounce USA); Dkt. 206 (January 30, 2019 entry of default against Pounce USA for failure to retain substitute counsel). Given the heady due process concerns at issue, the court declines to tip the scales in plaintiff's favor based on a suspicious temporal correlation.

11

Specialty, 2018 WL 6267823, at *3 (denying § 187 motion when faced with, inter alia, competing declarations regarding control).

Moreover, even if plaintiff could show that Viera controlled the litigation, plaintiff has presented virtually no evidence that Viera had "occasion to conduct [that control] with a diligence corresponding to the risk of personal liability." Katzir, 394 F.3d at 1150. True, Viera participated in this litigation in various ways, such as being deposed and submitting declarations. But a CEO/CFO's participation in his companies' litigation is neither uncommon nor sufficient. Id. (finding insufficient evidence of control where owner hired and discharged the corporation's attorneys, appeared at settlement conferences, and financed the litigation); Milton v. Cavaney, 56 Cal. 2d 576, 581 (1961) ("It is not sufficient that [the alter ego] supplies the funds for the prosecution or defense, that he appears as a witness or cooperates without having control." (citing Rest., Judgments, § 84)). In any event, Viera's mere participation in this litigation does not come close to outweighing the lack of evidence showing that Viera had notice that he faced the risk of personal liability before the court entered judgment.[7] Given the due process concerns at stake, the court cannot conclude that Viera had the opportunity to control the litigation with a diligence corresponding to the risk of personal liability when there is no evidence that Viera knew or should have known he faced the risk of such liability.[8] Compare Oceans II, Inc., 2015 WL 4484208, at *5 (amending default judgment to add CEO who was sued in his individual capacity and later defaulted).

Nor has plaintiff shown that it could not have raised Viera's liability at an earlier stage because it only recently discovered that there was evidence supporting Viera's

---

[7] Though Viera was represented both by Pounce lawyers and at least one personal lawyer at his deposition, see Dkt. 254-10, Ex. T, at 11:19-16:15, that provides little evidence that Viera thought he faced personal liability.

[8] The relevant notice also cannot be derived from Viera's control and participation in this litigation. That is because such involvement only shows the proposed judgment debtor had notice of the litigation. It does not show that the proposed judgment debtor had notice that he faced the risk of being held personally liable. NEC, 208 Cal. App. 3d at 781 ("[I]t is not enough [to establish control] that [the proposed judgment debtor] was 'aware' of the action[.]").

12

alleged alter ego status. Indeed, much of the alter ego evidence plaintiff relies upon matches the evidence that plaintiff's February 2019 motion for default judgment relied upon. Compare Dkt. 208-25 at 9-16 to Dkt. 228-4 at 6-15. Plaintiff has provided no persuasive explanation for its failure to raise the issue of Viera's alleged alter ego status until after default judgment had been entered. And the court will not countenance the strategic use of § 187 in a manner that raises due process concerns. See also Correa Pallet, Inc. v. Lambeth, No. F052934, 2008 WL 1822639, at *15 (Cal. Ct. App. Apr. 24, 2008) (unpublished) (discussing § 187 and explaining that the alter ego doctrine is grounded in equity that requires the movant to act with "due diligence"). For those reasons, the court finds that plaintiff has not shown by a preponderance of the evidence that Viera had the "opportunity" or "occasion" to conduct this litigation with a diligence corresponding to his risk of personal liability.

For similar reasons, plaintiff has not shown that Viera was virtually represented in the lawsuit or that his interests aligned with the judgment debtors. Like in NEC, it is not apparent that Pounce's "interests and [Viera's] interests were [ ] the same." NEC, 208 Cal. App. 3d at 780. Though disputed, evidence shows that, as in NEC, Pounce defaulted because it "had no incentive to defend the [ ] lawsuit," as it "was on the verge of bankruptcy." Id. Plaintiff had the burden of showing that that litigation strategy effectively represented the personal interests of Pounce's alleged alter ego, Viera, who "was not named as a party, had no risk of personal liability and therefore was not required to intervene." Id. Because plaintiff has failed to carry that burden, the court "cannot say that [Viera] . . . had occasion to conduct the litigation with a diligence corresponding to the risk of personal liability that was involved or that [Viera] was virtually represented in the lawsuit." Id. at 781.[9]

---

[9] Pointing to Shanghai Minguang, 2008 WL 4004697, *5-6 (unpublished), plaintiff argues that because Viera is the alter ego of the Pounce entities, his interests necessarily align with the companies' interest. That analysis, however, largely collapses § 187's control prong into its alter ego prong. It also disappears the due process-based requirement that the proposed judgment debtor not only had the opportunity to control the litigation generally, but the opportunity to do so knowing that he or she risked being held

13

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to amend the default judgment to add Roger Viera is DENIED.[10]  Plaintiff's administrative motion to file additional information in support of its motion to amend, Dkt. 261, is DENIED as moot because the evidence therein would not change the analysis set forth above.

**IT IS SO ORDERED.**

Dated: August 6, 2019

PHYLLIS J. HAMILTON
United States District Judge

---

personally liable.  Plaintiff's citation to In re Levander, 180 F.3d at 1118, is similarly unpersuasive because that case did not involve a default judgment and discusses neither Motores nor NEC.  See also Katzir, 394 F.3d at 1148 (citing Levander but not discussing it in the context of using § 187 to amend a default judgment).

[10] Plaintiff's motions to seal, Dkts. 228, 254, are DENIED because no declaration was filed showing that the documents sought to be sealed met the relevant standard.  See Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1101–02 (9th Cir. 2016) (setting forth sealing standard).